NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11764

KEVIN BRIDGEMAN & others[1]  vs.  DISTRICT ATTORNEY FOR THE SUFFOLK DISTRICT & another.[2]


Suffolk.     January 8, 2015. - May 18, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.


Controlled Substances.  Constitutional Law, Plea, Conduct of government agents, Judicial review, Sentence, Delay in commencement of prosecution.  Due Process of Law, Plea, Sentence, Delay in commencement of prosecution, Intervention in civil action.  Committee for Public Counsel Services.  Attorney at Law, Attorney as witness.  Practice, Criminal, Plea, Postconviction relief, New trial, Sentence, Delay in commencement of prosecution, Conduct of government agents, Cross-examination by prosecutor.  Evidence, Guilty plea, Certificate of drug analysis, Disclosure of evidence, Cross-examination.  Supreme Judicial Court, Superintendence of inferior courts.  Practice, Civil, Intervention.


Civil action commenced in the Supreme Judicial Court for the county of Suffolk on January 9, 2014.

The case was reported by Botsford, J.

---

[1] Yasir Creach and Miguel Cuevas; Committee for Public Counsel Services (CPCS), intervener.

[2] District Attorney for the Essex District.  For the sake of simplicity, we refer to the district attorneys for the Suffolk and Essex Districts as "the Commonwealth."

Matthew R. Segal (Daniel N. Marx with him) for the petitioners.

Benjamin H. Keehn, Committee for Public Counsel Services (Nancy J. Caplan, Committee for Public Counsel Services, with him) for the intervener.

Vincent J. DeMore, Assistant District Attorney, for District Attorney for the Suffolk District.

Quentin Weld, Assistant District Attorney, for District Attorney for the Essex District.

Jean-Jacques Cabou, of Arizona; Joanna Perini-Abbott, of Oregon; & Daniel Gelb & Elizabeth A. Lunt, for National Association of Criminal Defense Lawyers & another, amici curiae, submitted a brief.

Richard Marshall, of New York, & Aaron M. Katz, C. Thomas Brown, Mark Vaughn, & Barbara J. Dougan, for Families Against Mandatory Minimums & others, amici curiae, submitted a brief.

SPINA, J.  The present case is the latest in a series of cases concerning the egregious misconduct of Annie Dookhan, a chemist who was employed in the forensic drug laboratory of the William A. Hinton State Laboratory Institute (Hinton drug lab) from 2003 until 2012.[3]  Kevin Bridgeman, Yasir Creach, and Miguel Cuevas (collectively, the petitioners) are three individuals who pleaded guilty to various drug offenses in cases where Dookhan signed the certificates of drug analysis (drug certificates) on the line labeled "Assistant Analyst."  On January 9, 2014, prior to this court's decision in Commonwealth v. Scott, 467 Mass. 336 (2014), the petitioners filed a petition in the county court

_____

[3] The details of Annie Dookhan's misconduct in the forensic drug laboratory of the William A. Hinton State Laboratory Institute (Hinton drug lab) have been well documented and, therefore, will not be repeated in the present case.  See, e.g., Commonwealth v. Scott, 467 Mass. 336, 338-342 (2014).

pursuant to G. L. c. 211, § 3, asking the court for two forms of relief. First, they asked for the establishment of a rule whereby defendants who have been convicted of drug offenses, and who successfully obtain new trials based on Dookhan's misconduct, cannot thereafter be charged with or convicted of more serious offenses than those of which the defendants originally were convicted, or be given longer sentences than originally were imposed. Second, the petitioners requested an order requiring those district attorneys who prosecuted so-called "Dookhan defendants"[4] to (1) notify all such defendants within ninety days whether the Commonwealth intends to reprosecute them;[5] (2) vacate the convictions in those cases where the defendants are not so notified; and (3) conclude any reprosecutions within six months. On May 27, 2014, following the release of our decision in Scott, supra,[6] the Committee for

---

[4] We use the term "Dookhan defendants" to refer generally to those individuals who were convicted of drug offenses and in whose cases Dookhan signed the certificate of drug analysis (drug certificate) on the line labeled "Assistant Analyst." These cases all arose in Barnstable, Bristol, Dukes, Essex, Middlesex, Norfolk, Plymouth, and Suffolk Counties, except for one case that arose in Worcester County.

[5] As noted by the single justice, the petitioners appear to propose notification to all Dookhan defendants, irrespective of whether they have sought and obtained postconviction relief.

[6] Relying on Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006), this court articulated in Scott, 467 Mass. at 346-358, a two-prong framework for analyzing a defendant's motion to withdraw a guilty plea under Mass. R. Crim. P. 30 (b),

Public Counsel Services (CPCS) filed a motion to intervene under Mass. R. Civ. P. 24 (a), 365 Mass. 769 (1974), to join the petitioners' requests for relief and to seek additional relief for all Dookhan defendants.[7]  The Commonwealth opposed both the petition for relief pursuant to G. L. c. 211, § 3, and the motion to intervene.  After several hearings, a single justice

---

as appearing in 435 Mass. 1501 (2001), in a case involving the misconduct of Dookhan at the Hinton drug lab.  Under the first prong of the analysis, a defendant must show egregious misconduct by the government that preceded the entry of the defendant's guilty plea and that occurred in the defendant's case.  Scott, supra at 347-354.  We recognized that, given the breadth and duration of Dookhan's malfeasance, it might be impossible for a defendant to show the required nexus between government misconduct and the defendant's own case.  Id. at 351-352.  Consequently, we established a special evidentiary rule whereby a defendant seeking to vacate a guilty plea under rule 30 (b) as a result of the revelation of Dookhan's misconduct, and proffering a drug certificate from the defendant's case signed by Dookhan on the line labeled "Assistant Analyst," would be entitled to "a conclusive presumption that egregious government misconduct occurred in the defendant's case."  Id. at 352.  Application of this conclusive presumption in a particular case meant that a defendant's evidentiary burden to establish each element of the first prong of the Ferrara-Scott framework was satisfied.  Id. at 353-354.  The defendant then had the burden under the second prong of the analysis of particularizing Dookhan's misconduct to his or her decision to tender a guilty plea.  Id. at 354.  That is to say, the defendant had to "demonstrate a reasonable probability that he [or she] would not have pleaded guilty had he [or she] known of Dookhan's misconduct."  Id. at 355.  A successful showing on this second prong of the Ferrara-Scott framework would warrant an order granting the defendant's motion to withdraw his guilty plea.

[7] CPCS does not represent any of the petitioners.  It seeks intervention to assert and protect the interests of numerous other Dookhan defendants for whom it inevitably will be called on to provide (or already is providing) representation.

on October 21, 2014, reserved and reported the entire case to the full court.

For the reasons that follow, we now conclude that (1) a defendant who has been granted a new trial based on Dookhan's misconduct at the Hinton drug lab cannot be charged with a more serious offense than that of which he or she initially was convicted under the terms of a plea agreement and, if convicted again, cannot be given a more severe sentence than that which originally was imposed; (2) the motion to intervene filed by CPCS is allowed; (3) a so-called "global remedy" will not be implemented at this time; (4) a lawyer who represented a Dookhan defendant at the plea stage of criminal proceedings is not barred by the advocate-witness rule from subsequently representing that defendant and testifying at an evidentiary hearing on the defendant's motion to withdraw a guilty plea; (5) the scope of cross-examination of a Dookhan defendant at a hearing on a motion to withdraw a guilty plea is left to the broad discretion of the motion judge; and (6) the testimony of a Dookhan defendant at a hearing on a motion to withdraw a guilty plea is only admissible at a subsequent trial for impeachment purposes if the defendant chooses to testify.[8]

---

[8] We acknowledge the amicus briefs submitted by Families Against Mandatory Minimums and others, and by the National Association of Criminal Defense Lawyers and the Massachusetts Association of Criminal Defense Lawyers.

1. <u>Background</u>. a. <u>Kevin Bridgeman</u>. On April 8, 2005, members of the Boston police department's drug control unit were conducting an undercover operation in the theater district. Officer Greg T. Walsh approached Bridgeman and purchased two rocks of what appeared to be "crack" cocaine for forty dollars in controlled "buy" money. Officers then attempted to arrest Bridgeman, whereupon he resisted and struck one of the officers with a closed fist. When Bridgeman was searched after his arrest, officers found twenty-two plastic bags containing what appeared to be crack cocaine and the forty dollars in buy money.

On June 2, 2005, a Suffolk County grand jury indicted Bridgeman on charges of possession of a class B controlled substance (cocaine) with intent to distribute, as a second or subsequent offense, G. L. c. 94C, § 32A (<u>b</u>) (count one); distribution of a class B controlled substance (cocaine), as a second or subsequent offense, G. L. c. 94C, § 32A (<u>b</u>) (count three); violation of the controlled substances laws in proximity to a school, G. L. c. 94C, § 32J (counts two and four); assault and battery on a police officer, G. L. c. 265, § 13D (count five); and resisting arrest, G. L. c. 268, § 32B (count six). The Commonwealth produced drug certificates signed by Dookhan on the line labeled "Assistant Analyst," stating that the substances at issue contained cocaine as defined in G. L. c. 94C, § 31. Pursuant to a plea agreement, Bridgeman pleaded

guilty on October 4, 2005, to counts one (first offense), three (first offense), five, and six. The Commonwealth's motion to dismiss the second or subsequent offense portions of the indictments and the school zone charges was granted.[9]

On July 26, 2007, members of the Boston police department's drug control unit were conducting an undercover operation around Boston Common. An undercover officer approached Bridgeman, engaged him in conversation, walked with him to the Public Garden, and then purchased two plastic bags containing what appeared to be crack cocaine for forty dollars in buy money. Bridgeman was arrested, and when he was searched, officers found, among other items, ten additional bags containing what appeared to be crack cocaine and the forty dollars in buy money.

On September 24, 2007, a Suffolk County grand jury indicted Bridgeman on charges of possession of a class B controlled substance (cocaine) with intent to distribute, as a subsequent offense, G. L. c. 94C, § 32A (b) (count one); violation of the controlled substances laws in proximity to a park, G. L. c. 94C, § 32J (count two); and distribution of a class B controlled substance (cocaine), as a subsequent offense, G. L. c. 94C,

---

[9] With respect to the charge of possession of cocaine with intent to distribute, Bridgeman was sentenced to State prison for two to three years. With respect to the charges of distribution of cocaine, assault and battery on a police officer, and resisting arrest, Bridgeman was sentenced to three years' probation, to commence on and after his sentence for possession of cocaine with intent to distribute.

§ 32A (b) (count three). The Commonwealth again produced drug certificates signed by Dookhan on the line labeled "Assistant Analyst," stating that the substances at issue contained cocaine as defined in G. L. c. 94C, § 31. Pursuant to a plea agreement, Bridgeman pleaded guilty on April 17, 2008, to counts one and three.[10] The Commonwealth's motion to dismiss the park zone charge was granted. Bridgeman has completed service of his sentences, but has not yet filed a motion for postconviction relief.[11]

---

[10] With respect to the charges of possession of cocaine with intent to distribute, subsequent offense, and distribution of cocaine, subsequent offense, Bridgeman was sentenced to concurrent terms of from three to five years in State prison, to be served concurrently with the sentence he already was serving on his 2005 conviction of possession of cocaine with intent to distribute.

[11] In an affidavit dated December 30, 2013, filed in connection with the petition for relief under G. L. c. 211, § 3, Bridgeman stated that, at the time he pleaded guilty to the various drug charges, he was unaware of Dookhan's misconduct. He further stated that, had he known about Dookhan's misconduct, it was reasonably probable that he would have sought dismissal of the indictments, would have tried to negotiate a different plea agreement with the Commonwealth, or would have gone to trial. In an affidavit dated December 19, 2013, Bridgeman's trial counsel with respect to the 2007 charges stated that, at the time he advised his client to plead guilty, he was not aware of Dookhan's misconduct. If he had been aware of such misconduct prior to Bridgeman's pleas, he would have sought dismissal of the indictments, and he would have advised Bridgeman to either negotiate for a better plea offer or consider proceeding to trial. In an affidavit dated January 4, 2014, Bridgeman's trial counsel with respect to the 2005 charges made similar representations.

b. <u>Yasir Creach</u>. On January 7, 2005, members of the Boston police department's drug control unit were conducting surveillance in the Chinatown section of Boston. They observed Creach engaging in a brief conversation with another man before the two entered an alley marked with a "no trespassing" sign. The officers followed the men into the alley and saw Creach smoking from a glass tube that had been modified into a crack pipe. The officers recovered one rock of what appeared to be crack cocaine from the pipe, and Creach was placed under arrest. Three days later, a criminal complaint issued from the Central Division of the Boston Municipal Court Department charging Creach with trespassing, G. L. c. 266, § 120 (count one); and possession of a class B controlled substance (cocaine), G. L. c. 94C, § 34. The Commonwealth produced a drug certificate signed by Dookhan on the line labeled "Assistant Analyst," stating that the substance at issue contained cocaine as defined in G. L. c. 94C, § 31. Creach pleaded guilty on April 20, 2005, to both charges.[12] He has completed service of his sentences, but has not yet filed a motion for postconviction relief.[13]

---

[12] According to the Commonwealth, Creach was sentenced to concurrent terms of incarceration totaling one year in a house of correction.

[13] In an affidavit dated December 30, 2013, filed in connection with the petition for relief under G. L. c. 211, § 3, Creach stated that, at the time he pleaded guilty to the drug charge, he was unaware of Dookhan's misconduct. He further

c. <u>Miguel Cuevas</u>. On January 5, 2007, members of the Salem police department were conducting an undercover operation in the "Point" neighborhood of Salem. An undercover officer contacted Cuevas by cellular telephone, the two met, and Cuevas sold the officer a "twist" of what the officer believed to be cocaine for forty dollars in buy money. Three days later, undercover officers again contacted Cuevas by cellular telephone and arranged to purchase more cocaine. Cuevas directed the officers to meet him at the corner of Bridge and Rice Streets. Once there, the officers picked up Cuevas from the side of the road and drove him to the vicinity of a residence on Palmer Street. Cuevas got out of the vehicle, disappeared from sight for a few minutes, and then returned with another twist of what the officers believed to be cocaine. On January 10, undercover officers once more contacted Cuevas by cellular telephone and arranged to purchase cocaine and heroin. The officers picked up Cuevas at the corner of Bridge and Rice Streets and again drove him to Palmer Street. Cuevas got out of the vehicle, briefly

---

stated that, had he known about Dookhan's misconduct, it was reasonably probable that he would have tried to negotiate a different plea agreement with the Commonwealth, or would have gone to trial. In an affidavit dated December, 2013, Creach's trial counsel stated that, at the time she advised her client to plead guilty, she was not aware of Dookhan's misconduct. If she had been aware of such misconduct prior to Creach's pleas, she would have discussed with him the options of attempting to secure a more favorable plea agreement with the Commonwealth or proceeding to trial.

entered Theo's Market, and then returned to the vehicle where he sold the officers what appeared to be cocaine and heroin for ninety dollars in buy money.

On October 5, 2007, an Essex County grand jury indicted Cuevas on charges of distribution of a class B substance (cocaine), as a second or subsequent offense, G. L. c. 94C, § 32A (d) (counts one, two, and three); and distribution of a class A substance (heroin), as a second or subsequent offense, G. L. c. 94C, § 32 (b) (count four).  The Commonwealth produced drug certificates signed by Dookhan on the line labeled "Assistant Analyst," stating that the substances at issue contained, respectively, cocaine and heroin as defined in G. L. c. 94C, § 31.  Pursuant to a plea agreement, Cuevas pleaded guilty on January 30, 2009, to all four counts.[14]  The Commonwealth did not pursue the second or subsequent offense portions of the indictments.  Cuevas has completed service of his sentences.[15]  On October 18, 2012, Cuevas filed a motion to

---

[14] Cuevas was sentenced to concurrent terms of between four and one-half years and five years in State prison.

[15] In an affidavit dated December 31, 2013, filed in connection with the petition for relief under G. L. c. 211, § 3, Cuevas stated that, at the time he pleaded guilty to the various drug charges, he was not aware of Dookhan's misconduct.  He further stated that, had he known about Dookhan's misconduct, it was reasonably probable that he would have sought dismissal of the indictments, would have tried to negotiate a different plea agreement with the Commonwealth, or would have gone to trial. In an affidavit dated December 30, 2013, Cuevas's trial counsel

withdraw his guilty pleas pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), based on Dookhan's misconduct at the Hinton drug lab. That motion remains pending.

2. *Exposure to harsher punishment*. The petitioners contend that our decision in Scott has given rise to a substantial fear among Dookhan defendants that by challenging their drug convictions, they will subject themselves to harsher punishment than was imposed when they pleaded guilty.[16] For example, they continue, a successful motion for a new trial could result in the reinstatement of previously dismissed charges that carry mandatory minimum sentences.[17] In the

---

stated that, at the time he advised his client to plead guilty, he was not aware of Dookhan's misconduct. If he had been aware of such misconduct prior to Cuevas's pleas, he would have sought dismissal of the indictments, and he would have advised Cuevas to either negotiate for a better plea offer or consider proceeding to trial.

[16] In their petition for relief under G. L. c. 211, § 3, the petitioners do not distinguish between defendants who pleaded guilty and those who were convicted after a trial. Our decision today only addresses those cases that were resolved on the basis of guilty pleas.

[17] The petitioners point to the case of Angel Rodriguez as a cautionary tale. See Commonwealth vs. Rodriguez, Superior Ct., ESCR2007-00875 (Essex County). Rodriguez was indicted on a charge of trafficking in cocaine (one hundred grams or more), G. L. c. 94C, § 32E (b) (1). He pleaded guilty to a reduced charge of trafficking in cocaine (twenty-eight to one hundred grams), G. L. c. 94C, § 32E (b) (2), and was sentenced to State prison for from five to seven years. After the revelation of Dookhan's misconduct, Rodriguez filed a motion to vacate his guilty plea pursuant to Mass. R. Crim. P. 30 (b). A judge in the Superior Court allowed the motion. The Commonwealth then

petitioners' view, the magnitude of Dookhan's misconduct has placed enormous pressure on the Commonwealth to limit their postconviction relief. They assert that the Commonwealth has an aversion to the duplicative expenditure of scarce prosecutorial resources, that the judicial system has a bias against retrying issues that already have been decided, and that the Commonwealth has a desire to preserve convictions. Consequently, the petitioners argue that their fear of receiving a harsher punishment has chilled the exercise of their postconviction rights. Given these considerations, the petitioners contend that this court should conclude that defendants who plead guilty to drug offenses and subsequently are granted new trials based on Dookhan's misconduct at the Hinton drug lab cannot (1) be charged with more serious offenses than those of which they initially were convicted; and (2) if convicted again, cannot be given sentences longer than those that originally were imposed.

Preliminarily, before reaching the merits of the petitioners' arguments, we must resolve a procedural matter. The Commonwealth asserts that the petitioners' claims are not ripe for review because the harm the petitioners have alleged -- harsher sentences following new trials -- is hypothetical. The

charged Rodriguez with trafficking in one hundred grams or more of cocaine, a jury convicted him of that charge, and he was sentenced to from eight years to eight years and one day in State prison. The case of Angel Rodriguez suggests that petitioners' fear is not baseless or unwarranted.

Commonwealth correctly points out that, among the petitioners, only Cuevas has sought postconviction relief by filing a motion to withdraw his guilty pleas based on Dookhan's misconduct, and according to the record, the motion remains pending. In the Commonwealth's view, the harm alleged by the petitioners is speculative until such time as the petitioners are granted new trials, the Commonwealth charges the petitioners with more serious offenses, and, if convicted, the petitioners actually receive harsher punishments. Until those events unfold, the Commonwealth continues, the petitioners' claims are not ripe for review.

Generally speaking, "this court will not review [a] matter until the entire case is ripe for review due to the burdensome nature of 'piecemeal appellate review.'" Campana v. Directors of the Mass. Hous. Fin. Agency, 399 Mass. 492, 499 n.16 (1987). However, given the significance of this case in light of the thousands of defendants who have been affected by Dookhan's misconduct and now are considering whether to pursue postconviction relief, coupled with the impact our decision will have on the timely administration of justice in all Hinton drug lab cases, we conclude that it is appropriate to review the petitioners' claims now in accordance with our broad powers of superintendence under G. L. c. 211, § 3. See Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 657 n.5

(2013), S.C., 471 Mass. 12 (2015).  We agree with the single justice that in the unique circumstances of this case, the interests of justice dictate immediate resolution of the petitioners' claims.  Moreover, we have said that where, as here, "the single justice has, in [her] discretion, reserved and reported the case to the full court, we grant full appellate review of the issues reported."  Id., quoting Commonwealth v. Goodwin, 458 Mass. 11, 14-15 (2010).

We turn to the merits of the petitioners' arguments.  Since the revelation of Dookhan's egregious misconduct at the Hinton drug lab -- a lapse of widespread magnitude in the criminal justice system -- we have found it necessary to exercise our general superintendence power to ameliorate its damaging effects.  In the early stages of the crisis, this court reviewed and resolved the legality of plea colloquies conducted by special magistrates appointed by the Chief Justice of the Superior Court Department of the Trial Court to preside over criminal proceedings in cases relating to the Hinton drug lab. See Commonwealth v. Charles, 466 Mass. 63, 65-66, 88-89 (2013). Then, in Scott, we articulated a workable approach by which judges should evaluate and decide individual motions to withdraw guilty pleas brought by defendants affected by Dookhan's misconduct.  See Scott, 467 Mass. at 352.  See also note 6, supra.  Now, with this approach in place, it is incumbent on the

court to address uncertainties regarding the legal implications of a defendant's decision to challenge his or her ostensibly tainted drug conviction, and the propriety of returning the parties to the positions they occupied before entering into a plea agreement.  These matters are ones of systemic concern that this court shall resolve through the exercise of its general superintendence powers under G. L. c. 211, § 3, so as to ensure that a fear of more punitive consequences, as expressed by the petitioners, does not render their right to seek postconviction relief a flawed option.  See Charles, supra at 88-89.

It is well established that "[r]emedies for prosecutorial misconduct should be tailored to the injury suffered and should not unnecessarily infringe on competing interests."  Commonwealth v. Cronk, 396 Mass. 194, 199 (1985).  See Commonwealth v. Wood, 469 Mass. 266, 290-292 (2014); Commonwealth v. Frith, 458 Mass. 434, 439-440 (2010); Commonwealth v. Cinelli, 389 Mass. 197, 209-210, cert. denied, 464 U.S. 860 (1983).  "[P]rosecutorial misconduct requires that the rights of defendants be balanced against the necessity for preserving society's interest in the administration of justice."  Cronk, supra.  See Scott, 467 Mass. at 352.  In the ordinary course, "when a defendant withdraws his [guilty] plea after sentencing, he may receive a harsher sentence than was originally imposed."  Commonwealth v. DeMarco, 387 Mass. 481,

486 (1982).  See Commonwealth v. DeJesus, 468 Mass. 174, 178 (2014) (judge vacated defendant's plea of guilty and reinstated portion of indictment charging defendant with trafficking in cocaine, which had been dismissed under terms of plea agreement); Commonwealth v. Therrien, 359 Mass. 500, 502-505 (1971) (allowance of defendant's motion to withdraw plea of guilty to murder in second degree subjected defendant to trial on charge of murder in first degree with attendant penalties).  However, a defendant who files a motion to withdraw a guilty plea as a consequence of Dookhan's misconduct is not doing so in the context of an ordinary criminal case in which the original charges brought by the Commonwealth, and their attendant sentences, simply can be reinstated as if the plea bargain had never occurred.

A return to the status quo ante would mean ignoring the egregious misconduct of Dookhan and disregarding its impact on criminal defendants whose drug samples she analyzed.  This course of action would present a defendant with two options.  A defendant could choose not to file a motion for postconviction relief and accept the fact that his or her convictions may have been tainted by Dookhan's misconduct.  Alternatively, a defendant could choose to file a motion to withdraw his or her guilty plea and, if allowed, accept the fact that he or she may be subject to a harsher punishment than was imposed when he or

she pleaded guilty. Either way, defendants wrongly would bear the burden of a systemic lapse that, in the circumstances of the Hinton drug lab, we have said is entirely attributable to the government, even though there is no indication that prosecutors had actual knowledge of Dookhan's misconduct during their prosecutions of the Dookhan defendants. See Scott, 467 Mass. at 347-352. Were it not for Dookhan's actions, defendants would not be in the position of having to seek postconviction relief from her malfeasance in the first instance. Moreover, it cannot be overlooked that many Dookhan defendants already have served the sentences to which they and the Commonwealth agreed. A return to the status quo ante simply is not a legally tenable solution, given that "[w]e must account for the due process rights of defendants . . . [and] the integrity of the criminal justice system." Scott, supra at 352. The proper solution is one that takes into consideration the interests of the Dookhan defendants and the Commonwealth, recognizing that "in the wake of government misconduct that has cast a shadow over the entire criminal justice system, it is most appropriate that the benefit of our remedy inure to defendants." Id. See Lavallee v. Justices in the Hampden Superior Court, 442 Mass. 228, 246 (2004).

A plea bargain often has been compared to an enforceable contract. See Commonwealth v. Tirrell, 382 Mass. 502, 512

(1981); Commonwealth v. Cruz, 62 Mass. App. Ct. 610, 611 (2004). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). See Correale v. United States, 479 F.2d 944, 947 (1st Cir. 1973) ("the most meticulous standards of both promise and performance must be met by prosecutors engaging in plea bargaining"). We have said that "when the prosecutor enters into plea bargain agreements, 'the court will see that due regard is paid to them, and that the public faith which has been pledged by him is duly kept.'" Commonwealth v. Santiago, 394 Mass. 25, 28 (1985), quoting Commonwealth v. Benton, 356 Mass. 447, 448 (1969). See Cruz, supra at 612; Doe v. District Attorney for the Plymouth Dist., 29 Mass. App. Ct. 671, 673 (1991). See also Reporters' Notes to Mass. R. Crim. P. 12, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1491-1492 (LexisNexis 2014-2015).

Here, before the revelation of Dookhan's misconduct, the petitioners and the Commonwealth entered into plea agreements that both parties considered to be mutually advantageous and fair. The petitioners agreed to waive various constitutional rights associated with proceeding to trial, and to relieve the Commonwealth of its burden of proving the petitioners' guilt

beyond a reasonable doubt. See Commonwealth v. Lopez, 447 Mass. 625, 628 (2006) (guilty plea constitutes waiver of three constitutional rights: right to jury trial, right to confront one's accusers, and privilege against self-incrimination). See also Commonwealth v. Russell, 470 Mass. 464, 468 (2015) ("In a criminal case, due process requires that the Commonwealth prove the defendant's guilt beyond a reasonable doubt"). In exchange, the Commonwealth agreed to reduce the charges against the petitioners,[18] and, consequently, the sentences that would be imposed by a judge. Any subsequent motions to withdraw those guilty pleas must be viewed as an inevitable result of the disclosure of Dookhan's misconduct. That being the case, the Commonwealth cannot simply reprosecute the petitioners as if the plea agreements had never existed, thereby giving the Commonwealth a second bite at the proverbial apple in its efforts to convict the petitioners. Instead, the Commonwealth must be held to the terms of its plea agreements.[19]

---

[18] It does not appear from the record that the charges against Creach actually were reduced as a consequence of his plea agreement with the Commonwealth. That said, the writing on the tender of plea form is virtually unreadable.

[19] In those cases where Dookhan defendants have completed service of their sentences, the Commonwealth has obtained the full benefit of its plea agreements. If, following a Dookhan defendant's successful withdrawal of a guilty plea, the Commonwealth could reinstate previously dismissed charges that carry mandatory minimum sentences and reprosecute a defendant on all of the charges, the Commonwealth ultimately could benefit

Therefore, we hold that in cases in which a defendant seeks to withdraw a guilty plea under Mass. R. Crim. P. 30 (b) as a result of the revelation of Dookhan's misconduct, and where the motion is allowed, the defendant cannot (1) be charged with a more serious offense than that of which he or she initially was convicted under the terms of a plea agreement; and (2) if convicted again, cannot be given a more severe sentence than that which originally was imposed. In essence, a defendant's sentence is capped at what it was under the plea agreement. See Ferrara v. United States, 372 F. Supp. 2d 108, 111 (D. Mass. 2005), aff'd, 456 F.3d 278 (1st Cir. 2006) (when determining proper remedy for government misconduct, "[t]he court's goal is to fashion a remedy that will, as much as possible, place [the defendant] in the position that he would have been in if the government had not violated his constitutional right to [d]ue [p]rocess"). Our holding will enable the Commonwealth to reprosecute defendants as appropriate, such as where there is sufficient untainted evidence for the Commonwealth to satisfy its burden of proving the charged crimes beyond a reasonable doubt. At the same time, our holding also will safeguard the integrity of the criminal justice system by ensuring that

from Dookhan's misconduct. Successful reprosecution of a defendant could result in the imposition of a longer sentence. Even if the Commonwealth's reprosecution were not successful, such a defendant already would have served the agreed-upon sentence under the previous plea agreement.

defendants may challenge convictions of drug crimes based on tainted evidence.

3. <u>Undue delay in postconviction relief</u>. The petitioners assert that the Commonwealth has violated their due process rights by unduly delaying the provision of postconviction relief to Dookhan defendants. They point out that, among other lapses, there is no comprehensive list of docket numbers identifying all of the cases in which Dookhan served as either the primary or secondary chemist,[20] and that lawyers have not yet been appointed for approximately 30,000 individuals. In the petitioners' view, these delays have been prejudicial because the Dookhan defendants must contend with the ongoing uncertainties over and the collateral consequences of their purportedly tainted convictions. The petitioners propose that we order the following relief: (1) the Commonwealth should be given ninety days to notify individual defendants, or their counsel, whether

---

[20] The petitioners acknowledge that in September, 2014, the district attorneys for the Suffolk and Essex Districts provided CPCS with docket numbers for the cases from Suffolk and Essex Counties, respectively, in which Dookhan analyzed the drug samples as either the primary or secondary chemist. We are aware that since the oral argument in this case, the district attorneys for the Bristol and Norfolk Districts also have provided to CPCS docket numbers for such cases in their respective counties. Other district attorneys, including those for the Cape and Islands, Middlesex, and Plymouth Districts, have not done so.

it intends to reprosecute their cases;[21] (2) defendants who do not receive such notification within ninety days will be entitled to have their convictions vacated with prejudice; and (3) if timely notice is provided, the Commonwealth will have six months to bring the cases to trial or to conclude them with guilty pleas.

With regard to the matter of undue delay, "[t]he guaranty of a speedy trial set forth in the Sixth Amendment to the United States Constitution (and art. 11 of the Massachusetts Declaration of Rights) is not read as applying to the appellate process." Commonwealth v. Lee, 394 Mass. 209, 220 (1985), quoting Williams, petitioner, 378 Mass. 623, 625 (1979). However, this court has said that "deliberate blocking of appellate rights or inordinate and prejudicial delay without a defendant's consent, may rise to the level of constitutional error." Commonwealth v. Swenson, 368 Mass. 268, 279-280 (1975). See Commonwealth v. Thomas, 400 Mass. 676, 684 (1987). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976), quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965). See Paquette v. Commonwealth, 440 Mass. 121, 131 (2003), cert. denied, 540 U.S. 1150 (2004). We recognize that an inordinate delay in resolving

---

[21] See note 5, supra.

the Hinton drug lab cases may result in a loss of liberty if an incarcerated defendant's conviction is overturned, and "may entail anxiety, forfeiture of opportunity, and damage to reputation, among other conceivable injuries."  Williams, petitioner, supra at 626.  At the same time, our response to Dookhan's misconduct necessarily requires consideration of not only "the due process rights of defendants," but also "the integrity of the criminal justice system, the efficient administration of justice in responding to such potentially broad-ranging misconduct, and the myriad public interests at stake."  Scott, 467 Mass. at 352.

Given the unprecedented circumstances surrounding the debacle at the Hinton drug lab, and the substantial efforts that are being made to deal with the impact of Dookhan's misconduct on affected defendants, we conclude that, at this juncture, any delays in the provision of postconviction relief do not "rise to the level of constitutional error."  Swenson, 368 Mass. at 280.  Our decisions in Scott, see note 6, supra, and Charles[22] have

---

[22] In Commonwealth v. Charles, 466 Mass. 63 (2013), this court concluded that, "[i]n exceptional circumstances, a judge of the Superior Court [has] the authority to allow a defendant's motion to stay the execution of his sentence, then being served, pending disposition of the defendant's motion for a new trial." Id. at 79.  We further concluded that special magistrates have the authority under Mass. R. Crim. P. 47, 378 Mass. 923 (1979), to conduct guilty plea colloquies with defendants in special drug lab sessions, and to report their findings concerning such issues as the voluntariness of the proposed plea and the factual

provided Dookhan defendants and the Commonwealth with meaningful solutions for addressing concerns that have arisen as defendants attempt to challenge their drug convictions.  In particular, the special evidentiary rule that we created in Scott is designed to enable a defendant "to establish the requisite nexus between egregious government wrongdoing and the defendant's [own] case" and to "relieve the trial courts of the administrative burden of making duplicative and time-consuming findings in potentially thousands of new trial motions regarding the nature and extent of Dookhan's wrongdoing."  Scott, 467 Mass. at 353.  Affidavits from assistant district attorneys in the Bristol, Essex, Middlesex, Norfolk, and Suffolk Districts regarding the progress of motions for new trials or motions to withdraw guilty pleas filed by Dookhan defendants suggest that they are being resolved at a steady pace.[23]

That said, we recognize that there has been some delay in providing Dookhan defendants with postconviction relief given

basis for the plea to a presiding justice of the Superior Court.  See id. at 66, 85-87, 89-91.

[23] These affidavits are included in the Commonwealth's supplemental appendix, which is not a part of the record in this case.  The Commonwealth has not filed a motion to supplement the record.  At the same time, the petitioners have not filed a motion to strike the Commonwealth's supplemental appendix.  On October 7, 2014, CPCS filed its own motion to supplement the record pursuant to Mass. R. A. P. 8 (e), as amended, 378 Mass. 932 (1979).  See note 27, infra.  In light of our decision to allow the motion filed by CPCS, see id., and in the interest of fairness, we shall consider the Commonwealth's supplemental appendix to be a part of the record in this case.

their reluctance to file motions to withdraw their guilty pleas because of fears that they will be reprosecuted on more serious charges and will face harsher punishments than resulted from their plea agreements. Here, for example, neither Bridgeman nor Creach has filed a motion to withdraw his guilty pleas. Our decision today should alleviate those fears and remove a significant impediment to further proceedings pertaining to their convictions.

We also realize that efforts to provide postconviction relief to Dookhan defendants have been hampered by the inability of CPCS to ascertain which cases may have been tainted by Dookhan's misconduct. The ability of CPCS to identify clients and to assign them attorneys who will represent their interests in postconviction proceedings is crucial to the administration of justice in the Hinton drug lab cases.[24] During earlier proceedings in this case in the county court, the Commonwealth commendably provided the single justice and CPCS with the docket numbers (and other relevant identifying information) of the Suffolk County and Essex County cases in which Dookhan analyzed the drug samples as either the primary or secondary chemist. See Mass. R. Prof. C. 3.8 (d), 426 Mass. 1397 (1998) ("The prosecutor in a criminal case shall . . . make timely disclosure

---

[24] We focus here on CPCS, but recognize that not all Dookhan defendants were represented by CPCS attorneys.

to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense . . .").  While recognizing that only the district attorneys for the Suffolk and Essex Districts currently are parties to this case, we encourage the district attorneys for the districts in other counties in which Dookhan analyzed drug samples as either the primary or secondary chemist to assist the single justice in obtaining docket numbers (and other relevant identifying information) for those cases.  See note 20, supra.

4.  Motion to intervene by CPCS.  We begin with some pertinent background.  On March 12, 2013, CPCS filed a motion to intervene in earlier litigation arising as a consequence of Dookhan's misconduct at the Hinton drug lab.  See Commonwealth vs. Charles, No. SJ-2013-0066, S.C., Commonwealth v. Charles, 466 Mass. 63 (2013).  Among other reasons for its motion, CPCS sought to "preserve its clients' due process rights to the just and timely resolution of the many thousands of previously-adjudicated cases tainted by the systemic malfeasance and incompetence at the Hinton Drug Lab" and to "advocate for remedies that [would] restore the integrity of the criminal justice system."  A single justice denied the motion, without prejudice to renewal, concluding that it was premature in light of the ongoing investigations of the Hinton drug lab by Attorney

David Meier and by the office of the Inspector General. The single justice stated that CPCS would have an opportunity to renew its motion "at an appropriate time." In the view of CPCS, now is the appropriate time for intervention on the side of the petitioners.

On May 27, 2014, CPCS filed its motion to intervene in the present case pursuant to Mass. R. Civ. P. 24 (a).[25] CPCS agrees with and supports the positions taken by the petitioners. It contends that tens of thousands of defendants who pleaded guilty to various drug offenses without any knowledge of Dookhan's misconduct require the assistance of counsel to secure relief from the violation of their due process rights, and CPCS inevitably will be called on to provide (or already is providing) representation. Beyond the issues raised by the petitioners, CPCS asserts that its ability to assign counsel for Dookhan defendants has been hindered by the position taken by prosecutors in at least one county that a lawyer who represented a defendant at the plea stage of criminal proceedings may not thereafter represent and testify on behalf of that defendant at a hearing on a motion to withdraw a guilty plea without

---

[25] As acknowledged by CPCS, its motion to intervene does not delve into our jurisprudence on intervention. Nonetheless, CPCS has incorporated by reference the legal arguments that it made in its prior motion to intervene, filed on March 12, 2013, and that earlier motion has been included in the record of the present case.

violating Mass. R. Prof. C. 3.7 (a), 426 Mass. 1396 (1998)

(advocate-witness rule).[26]  In the view of CPCS, such "dual role

representation" should be permitted.  CPCS also asserts that

Dookhan defendants are concerned about pursing postconviction

relief because special magistrates, at hearings on motions to

withdraw guilty pleas, have permitted wide-ranging cross-

examination of defendants regarding their factual guilt.[27]  CPCS

---

[26] Rule 3.7 (a) of the Massachusetts Rules of Professional
Conduct, 426 Mass. 1396 (1998), provides, in pertinent part,
that "[a] lawyer shall not act as advocate at a trial in which
the lawyer is likely to be a necessary witness except where
. . . disqualification of the lawyer would work substantial
hardship on the client."

[27] With respect to this issue, on October 7, 2014, CPCS
filed a motion to supplement the record pursuant to Mass. R. A.
P. 8 (e).  It seeks to include in the record the transcript of a
hearing before a special magistrate and other papers from
Commonwealth vs. Cruz, Superior Ct., SUCR2009-10595 (Suffolk
County).  CPCS asserts that these papers are relevant to the
question of the permissible scope of cross-examination when a
Dookhan defendant testifies in support of a motion to withdraw a
guilty plea.  Defense attorneys have taken the position that
cross-examination on the facts of the case should be limited to
the defendant's understanding of the nature and extent of the
prosecution's evidence.  Prosecutors have argued that the "full
context" of a defendant's plea decision under Scott, 467 Mass.
at 357, opens the door to an inquiry encompassing the
defendant's factual guilt.  According to CPCS, rulings by
special magistrates on this issue have varied widely.  For
example, in the Cruz case, supra, the special magistrate
permitted the prosecutor, over objection, to cross-examine the
defendant about his culpability for two drug offenses -- what he
had done, said, and known regarding the alleged contraband in
question -- and to ask the defendant whether he had pleaded
guilty because, in fact, he was guilty.  In the view of CPCS,
the inclusion of these papers in the record will assist this
court in deciding whether the testimony of a Dookhan defendant
at a hearing on a motion to withdraw a guilty plea can be used

takes the position that the testimony of a Dookhan defendant at such a hearing should be deemed inadmissible in any subsequent reprosecution of the defendant, except for perjury.[28]  The Commonwealth opposes CPCS's motion to intervene on the grounds that the interests of CPCS are adequately represented by the petitioners, CPCS has not shown that it has other interests that would be impaired by the disposition of the petition for relief under G. L. c. 211, § 3, and CPCS seeks relief beyond the scope of the petition.

Rule 24 of the Massachusetts Rules of Civil Procedure, 365 Mass. 769 (1974), provides:

> "(a) Intervention of Right.  Upon timely application anyone shall be permitted to intervene in an action:  (1) when a statute of the Commonwealth confers an unconditional right to intervene or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and [the applicant] is so situated that the disposition of the action may as a practical matter impair or impede [the applicant's] ability

---

in a subsequent reprosecution of the defendant.  The Commonwealth has not filed an objection to CPCS's motion to supplement the record, and the single justice included the motion as part of her reservation and report to the full court. Because the transcript and other papers from the Cruz case provide helpful background information on this issue, we allow the motion to supplement the record.

[28] CPCS has raised several additional issues in its motion to intervene.  However, in a letter to the single justice dated September 26, 2014, CPCS limited the issues that it wanted reserved and reported to the full court to those that we have mentioned.

to protect that interest, unless [such] interest is adequately represented by existing parties."[29]

Judges have "broad discretion in deciding whether to permit intervention." Cruz Mgt. Co. v. Thomas, 417 Mass. 782, 785 (1994). See Corcoran v. Wigglesworth Mach. Co., 389 Mass. 1002, 1003 (1983).

Intervention should be allowed as of right when "(1) the applicant claims an interest in the subject of the action, and (2) [the applicant] is situated so that [its] ability to protect this interest may be impaired as a practical matter by the disposition of the action, and (3) [the applicant's] interest is not adequately represented by the existing parties."[30] Massachusetts Fed'n of Teachers, AFT, AFL-CIO v. School Comm. of Chelsea, 409 Mass. 203, 205 (1991) (Massachusetts Fed'n of Teachers). Given that rule 24 (a) (2) "does not articulate explicit criteria for determining the sufficiency of the asserted interest," appellate courts "have agreed that a 'flexible, rather than rigid approach is indicated,' and that

_____

[29] CPCS has not identified the subsection of Mass. R. Civ. P. 24 (a), 365 Mass. 769 (1974), on which it bases its motion. In the absence of an apparent statutory right to intervene, we shall assume that CPCS is relying on rule 24 (a) (2).

[30] Given that CPCS filed an earlier motion to intervene that was denied as premature, we need not consider the threshold question whether the present motion is timely. See Corcoran v. Wigglesworth Mach. Co., 389 Mass. 1002, 1003 (1983); Bolden v. O'Connor Café of Worcester, Inc., 50 Mass. App. Ct. 56, 61 (2000).

'the requirement should be viewed as a prerequisite rather than relied upon as a determinative criterion for intervention.'" Bolden v. O'Connor Café of Worcester, Inc., 50 Mass. App. Ct. 56, 62 (2000), quoting Cosby v. Department of Social Servs., 32 Mass. App. Ct. 392, 395-396 (1992). The United States Supreme Court has stated that the interest in the litigation must be "significantly protectable," Donaldson v. United States, 400 U.S. 517, 531 (1971), and it "must be sufficiently direct and immediate to justify the intervention." Bolden, supra. See Johnson Turf & Golf Mgt., Inc. v. Beverly, 60 Mass. App. Ct. 386, 390 (2004). An interest that is "remote" or "contingent" or "tangential" or "collateral" will not suffice. Bolden, supra. "In the end, however, there is 'no convenient rule of thumb' which we can employ [in deciding whether the interest prerequisite has been satisfied], . . . and we are thrown back upon the need for a practical, case-specific, fact-intensive analysis." Id., quoting Mayflower Dev. Corp. v. Dennis, 11 Mass. App. Ct. 630, 635 (1981).

We add that "the 'interest' requirement should be viewed more leniently in cases that, as here, implicate questions of public interest" and the potential impairment of such interest. Johnson Turf & Golf Mgt., Inc., supra. See, e.g., Cruz Mgt. Co., 417 Mass. at 786 (Massachusetts Housing Finance Agency [MHFA] allowed to intervene in case raising "significant

question of how damages should be calculated in an action for a breach of the implied warranty of habitability brought by a tenant who [was] the beneficiary of rent subsidies" paid by MHFA because, as administrator of so-called "Section 8" program, MHFA was proper party to raise concerns about impact of litigation on that program); Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 468-469, 479 n.13, cert. denied, 513 U.S. 868 (1994) (Attorney General allowed to intervene in name of Commonwealth to represent public interest in civil rights action involving access to facilities providing abortion counselling or services); Cosby, 32 Mass. App. Ct. at 396-397 (labor union allowed to intervene as of right in litigation between several members and employer where union had strong interest in balancing conflicting policies underlying seniority provisions and affirmative action requirements of collective bargaining agreement, in preserving integrity of grievance process, and in ensuring ability to protect interests of all union members).

An applicant for intervention as of right has the burden of showing that representation of its interests by an existing party will be inadequate. See Massachusetts Fed'n of Teachers, 409 Mass. at 206; Attorney Gen. v. Brockton Agric. Soc'y, 390 Mass. 431, 434 (1983). "The question whether the prospective intervener is adequately represented necessarily turns to a comparison of the interests asserted by the applicant and the

existing party." Mayflower Dev. Corp., 11 Mass. App. Ct. at 636. See Massachusetts Fed'n of Teachers, supra ("There is no single standard for determining when an applicant has carried his burden because the circumstances of the case determine the weight of that burden"). If the interest of the prospective intervener "is identical to that of one of the present parties, or if there is a party charged by law with representing his interest, then a compelling showing should be required to demonstrate why this representation is not adequate." Mayflower Dev. Corp., supra at 637, quoting 7A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1909, at 524 (1972) (Wright & Miller). See Planned Parenthood League of Mass., Inc. v. Attorney Gen., 424 Mass. 586, 599 (1997); Massachusetts Fed'n of Teachers, supra at 206-207; Attorney Gen. v. Brockton Agric. Soc'y, supra. If the prospective intervener's interest "is similar to, but not identical with that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, but [the applicant] ordinarily should be allowed to intervene unless it is clear that the [existing] party will provide adequate representation for the [applicant]." Mayflower Dev. Corp., supra, quoting Wright & Miller, supra. See Cosby, 32 Mass. App. Ct. at 397-398.

We conclude that CPCS's motion to intervene should be allowed. CPCS is an entity established by statute to "plan,

oversee, and coordinate the delivery of criminal and certain noncriminal legal services" to indigent defendants.[31]  G. L. c. 211D, § 1.  It has a substantial and immediate interest in these proceedings given its current and future responsibility for providing representation to thousands of indigent Dookhan defendants who want to pursue postconviction relief from their drug convictions.  It cannot be overstated that CPCS has been and will be asked to expend significant resources to handle countless numbers of these cases.  We agree with the Commonwealth that there is some overlap in the matters raised by

---

[31] Pursuant to G. L. c. 211D, § 5, CPCS is required to "establish, supervise and maintain a system for the appointment or assignment of counsel at any stage of a proceeding, either criminal or noncriminal in nature, provided, however, that the laws of the commonwealth or the rules of the supreme judicial court require that a person in such proceeding be represented by counsel; and, provided further, that such person is unable to obtain counsel by reason of his indigency."  The Commonwealth asserts that G. L. c. 211D does not authorize CPCS to intervene on behalf of a broad class of unnamed defendants whom it may or may not represent.  Plainly, not all Dookhan defendants will be represented by CPCS in the event they seek postconviction relief.  Nonetheless, the claims that have been raised in these proceedings are fundamental to the mission and responsibilities of CPCS, and will impact defendants beyond those currently identified as clients of CPCS.  See, e.g., Edwards, petitioner, 464 Mass. 454, 455, 458 (2013) (CPCS allowed to intervene in case deciding whether, in determining reasonable compensation to be paid expert retained by indigent petitioner seeking release from commitment as sexually dangerous person, judge is bound by hourly rate set by CPCS); Adoption of Meaghan, 461 Mass. 1006, 1006 (2012) (CPCS allowed to intervene to seek ruling whether father and child entitled to appointed counsel in case initiated by private parties involving termination of parental rights).  For these reasons, the fact that CPCS has moved to intervene on behalf of a broad class of unnamed individuals is not a bar to the allowance of its motion.

CPCS and the petitioners, especially with regard to the issue of exposure to harsher punishment. However, the interests of CPCS go well beyond those articulated by the petitioners.

CPCS is in the position of having to provide representation to Dookhan defendants in eight counties, and, as such, it has a compelling interest in advocating for uniform practices and solutions that will ensure consistent treatment for all of those defendants, irrespective of their individual jurisdictions. Limiting our review in this case to the specific concerns raised by the petitioners will hamper the timely ability of CPCS to address wider problems that inevitably have arisen as Dookhan defendants consider whether to pursue postconviction relief. The interests of CPCS are not and cannot be adequately represented by the petitioners. At the same time, contrary to the Commonwealth's assertion, CPCS is not attempting improperly to interject in these proceedings matters that are independent from or wholly unrelated to the relief sought by the petitioners. Contrast Coggins v. New England Patriots Football Club, Inc., 397 Mass. 525, 539 (1986); Rothberg v. Schmiedeskamp, 334 Mass. 172, 178 (1956). The additional issues raised by CPCS are directly connected to its ability to provide representation for Dookhan defendants and to its assessment of the benefits of pursing postconviction relief for those individuals. At this juncture, it is appropriate that CPCS,

which will be shouldering much of the burden for attempting to resolve the Hinton drug lab cases, be permitted to intervene in the present case.

5.  Global remedy.  CPCS contends that, in accordance with our broad powers of superintendence under G. L. c. 211, § 3, this court should implement a "global remedy" to resolve, once and for all, the tens of thousands of cases affected by Dookhan's egregious misconduct at the Hinton drug lab.  In the view of CPCS, the time and expense of proceeding on a case-by-case basis has become untenable.  Therefore, it proposes a two-part solution.  First, CPCS asserts that this court should vacate the convictions of all Dookhan defendants.  Second, it continues, this court should dismiss all such cases with prejudice or, in the alternative, give the Commonwealth a limited opportunity to reprosecute individual cases in which there is sufficient untainted evidence to prove the drug charges beyond a reasonable doubt.  Those cases that are not reprosecuted within one year, CPCS asserts, should be dismissed with prejudice in accordance with the speedy trial rule, Mass. R. Crim. P. 36 (b) (1) (D), as amended, 422 Mass. 1503 (1996).

We decline to implement a global remedy at this time.  As we have said, our decisions in Scott and Charles have provided Dookhan defendants and the Commonwealth with meaningful solutions for addressing concerns that have arisen as these

defendants attempt to challenge their drug convictions. Our decision today will go a long way in resolving additional concerns that have surfaced and in moving these cases forward towards resolution. We stated in Scott, 467 Mass. at 352, that when fashioning a workable approach for handling these cases, we must "account for the due process rights of defendants, the integrity of the criminal justice system, the efficient administration of justice in responding to such potentially broad-ranging misconduct, and the myriad public interests at stake." We also noted that while "[i]t certainly is true that we cannot expect defendants to bear the burden of a systemic lapse, . . . we also cannot allow the misconduct of one person to dictate an abrupt retreat from the fundamentals of our criminal justice system." Id. at 354 n.11, and cases cited. In our view, the implementation of a "one size fits all" approach is not presently a workable solution.

6. Advocate-witness rule. CPCS asserts that, by necessity, the vast majority of its assignments of counsel to Dookhan defendants for the pursuit of postconviction relief have been to the same attorneys who handled the defendants' guilty pleas. However, according to CPCS, prosecutors in at least one county have objected to this dual role representation, arguing that it is prohibited by Mass. R. Prof. C. 3.7 (a). CPCS contends that, given the urgent need for timely resolution of

innumerable Hinton drug lab cases, rule 3.7 (a) should not disqualify a lawyer who represented a Dookhan defendant at the plea stage of criminal proceedings from subsequently representing that defendant and testifying at an evidentiary hearing on the defendant's motion to withdraw a guilty plea.  We agree.

Rule 3.7 (a) of the Massachusetts Rules of Professional Conduct states, in relevant part, that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where . . . disqualification of the lawyer would work substantial hardship on the client" (emphasis added).  In Smaland Beach Ass'n, Inc. v. Genova, 461 Mass. 214, 219-226 (2012) (Smaland), this court discussed the purposes and scope of attorney disqualification under rule 3.7 (a).  We stated that "[t]he primary purpose of the rule is 'to prevent the jury as fact finder from becoming confused by the combination of the roles of attorney and witness.'"  Id. at 220, quoting Steinert v. Steinert, 73 Mass. App. Ct. 287, 291 (2008).  See comment [2] to rule 3.7 ("A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others.  It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof").  In addition, rule 3.7 (a) obviates the possibility that a lawyer

"will appear to vouch for his own credibility," Culebras Enters. Corp. v. Rivera-Rios, 846 F.2d 94, 99 (1st Cir. 1988); mitigates the perception that "the testifying lawyer may well be distorting the truth for the sake of his client," id.; and "relieves the opposing counsel of the difficult task of cross-examining his lawyer-adversary." Smaland, 461 Mass. at 220. See Borman v. Borman, 378 Mass. 775, 786-787 (1979); Serody v. Serody, 19 Mass. App. Ct. 411, 413-414 (1985). Weighing against these benefits is the substantial countervailing fact that rule 3.7 (a) "carries with it the severe consequence of stripping a party of chosen counsel." Smaland, supra. See Commonwealth v. Perkins, 450 Mass. 834, 853 & n.15 (2008) (criminal defendant generally enjoys right to be represented by counsel of own choosing).

Significantly, we pointed out in Smaland, 461 Mass. at 225, that rule 3.7 (a), by its plain language, prohibits a lawyer from acting as both an advocate and a necessary witness "at trial." There, the court analyzed the prohibitions of rule 3.7 (a) in the context of a lawyer-witness's pretrial representation of his clients and concluded that "an attorney considered to be a necessary witness may participate in pretrial proceedings, though it would be particularly prudent first to secure client consent after consultation." Smaland, supra at 226. We determined that such a reading of rule 3.7 (a) "adheres to its

text and fulfils its underlying purposes." Id. Concerns about potential jury confusion, cross-examination of a lawyer-adversary, and the appearance of impropriety "are absent or, at least, greatly reduced, when the lawyer-witness does not act as trial counsel, even if he performs behind-the-scenes work for the client in the same case." Id., quoting Culebras Enters. Corp., 846 F.2d at 100.

Relying on the plain language of rule 3.7 (a), and considering the context in which dual role representation has arisen vis-à-vis the Hinton drug lab cases, we conclude that the rule does not bar such representation. The request by CPCS to proceed with dual role representation does not involve plea counsel acting as both an advocate and a necessary witness "at trial." To the contrary, plea counsel will be acting in those capacities during a motion proceeding before a judge. There will be no jury that might become "confused by the combination of the roles of attorney and witness." Steinert, 73 Mass. App. Ct. at 291. To the extent that plea counsel may be in the position of having to comment on his or her own credibility, the judge is amply able to make the necessary credibility determinations without being swayed by any improper considerations. Apart from the defendant, plea counsel is likely the only individual who can attest to the circumstances surrounding the defendant's decision to plead guilty, and such

testimony is critical to the judge's decision whether to allow a motion to vacate a guilty plea. See Scott, 467 Mass. at 354-355 ("the defendant must demonstrate a reasonable probability that he would not have pleaded guilty had he known of Dookhan's misconduct"). At the time of plea negotiations, neither the defendant nor plea counsel could have imagined the events that later would unfold at the Hinton drug lab, or entertained the thought that plea counsel would be called as a witness at a subsequent proceeding. See comment [4] to rule 3.7 ("It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness"). Given the numbers of Dookhan defendants and of attorneys able to represent them, having plea counsel continue their representation of former clients is a sensible approach for resolving these cases in a timely and efficient manner. Plea counsel already will be familiar with a defendant's case and can expeditiously work toward bringing it to a conclusion.

We recognized in Smaland, 461 Mass. at 227 n.20, that "combining the roles of advocate and witness may create a conflict of interest [as] governed by Mass. R. Prof. C. 1.7, 426 Mass. 1373 (1998) (conflict of interest), or Mass. R. Prof. C. 1.9, 426 Mass. 1342 (1998) (prior representation)." See comment [1] and [5] to rule 3.7. The Commonwealth asserts that dual role representation presents a conflict of interest because the

Commonwealth likely will elicit information from counsel that is harmful to a defendant, particularly an admission that, apart from the drug certificate, the evidence against the defendant was strong. See Commonwealth v. Shraiar, 397 Mass. 16, 21 (1986) ("A genuine conflict of interest arises whenever trial counsel is called upon to give testimony adverse to his client"). Determining the existence of a conflict of interest is "primarily the responsibility of the lawyer involved," comment [5] to rule 3.7, and is a matter for discussion with the client. See Mass. R. Prof. C. 1.7 (b) (2). A defendant may consent to dual role representation notwithstanding a conflict of interest. See id; comment [5] to rule 1.7. See also Perkins, 450 Mass. at 853. We conclude that Mass. R. Prof. C. 3.7 (a) does not bar dual role representation of a Dookhan defendant at a hearing on a motion to withdraw a guilty plea, although "it would be particularly prudent first to secure client consent after consultation."[32] Smaland, 461 Mass. at 226. Ultimately, as acknowledged by CPCS, the decision whether to

---

[32] We add that, in light of our conclusion, dual role representation at a Dookhan defendant's hearing on a motion to withdraw a guilty plea also does not run afoul of Rule 12 of the Rules of the Superior Court 1017 (LexisNexis 2014-2015), which states: "No attorney shall be permitted to take part in the conduct of a trial in which he has been or intends to be a witness for his client, except by special leave of the court" (emphasis added).

continue with plea counsel or request the appointment of a new attorney should remain in the hands of the defendant.

7. <u>Scope of testimony by Dookhan defendants</u>. Finally, CPCS raises two related claims pertaining to the testimony of a Dookhan defendant at a hearing on a motion to withdraw a guilty plea. First, CPCS contends that cross-examination of a defendant should not be permitted to delve into the defendant's guilt or innocence of the underlying crime, unless the defendant asserts a claim of actual innocence. As we understand its argument, CPCS does not seek to preclude cross-examination regarding the alleged facts of a given case, acknowledging that the Commonwealth should be free to question the defendant about his or her assessment of the nature and strength of the evidence against the defendant. However, CPCS wants to prevent the Commonwealth from turning the defendant's request for postconviction relief into what CPCS views as a game of "gotcha," where the Commonwealth's strategy is to ask the defendant about his or her guilt (and presumably elicit a response that he or she is not guilty) and then argue that the defendant is a liar because the defendant's testimony at the motion hearing contradicts his or her testimony from the plea colloquy. CPCS asserts that allowing the Commonwealth to pursue this line of cross-examination is unfair and prejudicial. Therefore, it continues, this court should limit the scope of

cross-examination to questions concerning the defendant's knowledge about the Commonwealth's evidence at the time he or she pleaded guilty. We decline to adopt CPCS's proposed evidentiary rule.

As CPCS correctly points out, a Dookhan defendant at a hearing on a motion to withdraw a guilty plea "must demonstrate a reasonable probability that he would not have pleaded guilty had he known of Dookhan's misconduct." Scott, 467 Mass. at 355. "Ultimately, a defendant's decision to tender a guilty plea is a unique, individualized decision, and the relevant factors and their relative weight will differ from one case to the next." Id. at 356. We have emphasized that "the full context of the defendant's decision to enter a plea agreement will dictate the assessment of his claim that knowledge of Dookhan's misconduct would have influenced [his] decision to plead guilty." Id. at 357. A judge's determination whether a defendant has made the necessary showing will be based on "the totality of the circumstances." Id. at 358.

It is well established that the scope and extent of cross-examination is left to a judge's broad discretion. See Commonwealth v. Horne, 466 Mass. 440, 447 (2013); Commonwealth v. Johnson, 431 Mass. 535, 538 (2000). See also Commonwealth v. Gagnon, 408 Mass. 185, 192 (1990), S.C., 430 Mass. 348 (1999), quoting Commonwealth v. Underwood, 358 Mass. 506, 513 (1970)

(judge determines extent to which "the accuracy, veracity, and credibility of a witness may be tested" on cross-examination). Consequently, whether the Commonwealth should be allowed to cross-examine a defendant on his or her guilt or innocence of the underlying crime is a matter for the motion judge to decide. If permitted, the judge can assess the Commonwealth's arguments about the defendant's truthfulness in the context of defense counsel's countervailing arguments about the essential reasons for the defendant's guilty plea. Judges are aware that, on occasion, defendants have an incentive to plead guilty for reasons other than actual guilt, including to avoid the imposition of mandatory minimum sentences in the event they are found guilty after trial. See Commonwealth v. Nikas, 431 Mass. 453, 455 (2000), and cases cited.

Second, and dovetailing with the issue just discussed, CPCS contends that the testimony of a Dookhan defendant at a hearing on a motion to withdraw a guilty plea should not be admissible at a subsequent trial on the defendant's guilt. In the view of CPCS, the Commonwealth cannot put a defendant in the position of having to surrender the privilege against self-incrimination in order to secure the allowance of the motion, and then turn around and use the defendant's testimony from the motion hearing against the defendant at trial. If such testimony is admissible at trial, CPCS continues, defendants will be deterred from

seeking postconviction relief in the first place.  CPCS argues
that, in light of Dookhan's egregious misconduct, this result
would be inherently unfair.[33]

In Simmons v. United States, 390 U.S. 377 (1968), the
United States Supreme Court considered the issue whether a
defendant's testimony at a suppression hearing regarding his
standing to allege a violation of his rights under the Fourth
Amendment to the United States Constitution could be admitted
against him at trial on the question of his guilt or innocence.
See id. at 382, 389-390.  Given that the defendant would be
obliged either to give up a valid Fourth Amendment claim, or
effectively waive his Fifth Amendment privilege against self-
incrimination, the Court found it "intolerable that one
constitutional right should have to be surrendered in order to
assert another."  Id. at 394.  Accordingly, the Court held that
"when a defendant testifies in support of a motion to suppress
evidence on Fourth Amendment grounds, his testimony may not
thereafter be admitted against him at trial on the issue of
guilt unless he makes no objection."  Id.  See Commonwealth v.
Rivera, 425 Mass. 633, 637 (1997) (recognizing rule articulated
in Simmons).

---

[33] The Commonwealth asserts that this issue is not ripe for
review because the harm alleged by CPCS is hypothetical.  For
the reasons already articulated, we conclude that it is
appropriate to consider CPCS's claim now in accordance with our
broad powers of superintendence under G. L. c. 211, § 3.

Here, although the rights asserted by a Dookhan defendant are somewhat different from those in Simmons, we reach a similar conclusion.  A defendant has a "constitutional due process right to a fair trial."  Commonwealth v. Henderson, 411 Mass. 309, 310 (1991).  See Scott, 467 Mass. at 352.  See also Strickland v. Washington, 466 U.S. 668, 684 (1984).  For a Dookhan defendant, the ability to exercise the right to a fair trial is contingent, in the first instance, on the allowance of a motion to withdraw a guilty plea.  However, the allowance of such a motion may depend in significant measure on the defendant's willingness to sacrifice the privilege against self-incrimination to enable the motion judge to assess the full context of the defendant's decision to plead guilty.  See Scott, 467 Mass. at 357.  Alternatively, a Dookhan defendant can sacrifice the right to a fair trial by asserting the Fifth Amendment privilege against self-incrimination at the hearing, thereby increasing the likelihood that his or her motion to withdraw a guilty plea will be denied.  Having to make this choice places the defendant in an untenable position.  On the one hand, the defendant is compelled to be a witness against himself or herself in order to obtain relief from egregious government misconduct that may well have tainted his or her conviction.  On the other hand, the defendant is deterred from pursuing his or her postconviction rights under Scott by not seeking to withdraw the guilty plea,

thereby perpetuating the injustice arising from Dookhan's misconduct. The relief afforded by the allowance of a motion to withdraw a guilty plea would be illusory if the Commonwealth then could turn around and use the defendant's testimony against him or her at trial. Accordingly, we conclude that the testimony of a Dookhan defendant at a hearing on a motion to withdraw a guilty plea is only admissible at a subsequent trial for impeachment purposes if the defendant chooses to testify.[34] See Commonwealth v. Rivera, 425 Mass. at 637, and cases cited (rule articulated in Simmons, 390 U.S. at 394, "has not been applied to exclude the use of prior inconsistent statements for impeachment purposes").

8. Conclusion. For the foregoing reasons, we conclude that (1) a defendant who has been granted a new trial based on Dookhan's misconduct at the Hinton drug lab cannot be charged with a more serious offense than that of which he or she initially was convicted under the terms of a plea agreement and, if convicted again, cannot be given a more severe sentence than that which originally was imposed; (2) the motion to intervene filed by CPCS is allowed; (3) a so-called "global remedy" will not be implemented at this time; (4) a lawyer who represented a Dookhan defendant at the plea stage of criminal proceedings is

---

[34] In accordance with Mass. R. Crim. P. 12 (f), as appearing in 442 Mass. 1511 (2004), statements made by a Dookhan defendant at a plea colloquy are not admissible at a subsequent trial.

not barred by the advocate-witness rule from subsequently representing that defendant and testifying at an evidentiary hearing on the defendant's motion to withdraw a guilty plea; (5) the scope of cross-examination of a Dookhan defendant at a hearing on a motion to withdraw a guilty plea is left to the broad discretion of the motion judge; and (6) the testimony of a Dookhan defendant at a hearing on a motion to withdraw a guilty plea is only admissible at a subsequent trial for impeachment purposes if the defendant chooses to testify.  The case is remanded to the single justice for further proceedings, consistent with this opinion, as appropriate.

So ordered.