JULIA A. GALLAGHER *vs.* THE FIRST NATIONAL BANK OF
BOSTON, executor
(and two companion cases[1]).

Worcester.   December 2, 1963. — January 3, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Survival of Action. Will,* Delivery. *Negligence,* Failure to deliver will.
*Contract,* What constitutes, To deliver will.

An alleged cause of action by a legatee named in a will against one having
custody of the will for failing to produce it for probate after the death
of the testatrix and thereby causing the legatee to be deprived of her
legacy sounded in tort, not contract, whether it was at common law or
under G. L. c. 191, § 13. [589]

An alleged cause of action in tort by a legatee named in a will against
one having custody of the will for negligently failing to produce it for
probate after the death of the testatrix and thereby causing the legatee
to be deprived of her legacy was not "for damage to . . . property" of
the legatee within G. L. c. 228, § 1 (2) (d), and did not survive the
death of the alleged tortfeasor.   [589–591]

THREE ACTIONS OF CONTRACT OR TORT.   Writs in the Supe-
rior Court dated July 19, 1960.

The actions were heard by *Sullivan,* J., on demurrers.

The cases were submitted on briefs.

*Thomas J. Carroll* for the plaintiffs.

*Walter S. Robbins & Philip D. Stevenson* for the de-
fendant.

WILKINS, C.J.   These are three actions by legatees un-
der the will of Mary A. Gallagher, late of Leominster,
against the executor under the will of Joseph A. Lovering,
Esquire, late of Leominster.   The writs are in contract or
tort.   Demurrers to the substitute declarations were sus-
tained generally, and the plaintiffs appealed.   The cases
are substantially identical and have been consolidated.   We
describe the pleadings in the first case only.

[1] The companion cases are one by Margaret Sharron individually and one
by Margaret Sharron, administratrix of the estate of Beatrice W. McGuire,
against the same defendant.

The declaration is in two counts. Count 1 is described as in contract and alleges: On or about September 30, 1952, the defendant's testator, Joseph A. Lovering, Esquire, prepared and witnessed a will for Mary A. Gallagher under the terms of which the plaintiff was a beneficiary. Upon its execution Mr. Lovering took the will for safekeeping, and thereby impliedly promised to deliver it at the request of the testatrix or her representatives. Mary A. Gallagher died on September 7, 1954. After the lapse of a reasonable time during which, after search, no will was found, an administrator of her estate was appointed by the Probate Court, Worcester County. Counsel for the estate inquired of Mr. Lovering whether he had prepared or had her will in his custody. Mr. Lovering stated that he had neither prepared nor had custody of her will. In fact, the will, which he had prepared, was in his custody. The administrator thereafter distributed among the next of kin the sum of $7,834.72, and a final account was allowed. The defendant executor located the will in Mr. Lovering's safe after his death. The will was allowed by the Probate Court on January 31, 1961. The plaintiff was not the next of kin, received no share of the estate, and has been unable to recover any of the amounts paid to the next of kin. Under the will the plaintiff was given a specific legacy of $500 and one third of the residue. The plaintiff's loss was due to Mr. Lovering's failure to produce or deliver the will for probate, and the plaintiff is entitled to recover damages with interest from November 23, 1955, the date of distribution of the assets.

Count 2, described as in tort, is substantially the same except instead of the allegation of an implied promise it contains an allegation that Mr. Lovering negligently failed to produce or deliver the will for probate.

One ground of demurrer is: "3. The plaintiff's action, in either contract or tort, did not survive against the estate of Joseph A. Lovering and his estate cannot be held liable therefor."

We do not consider whether the plaintiffs have a cause of

action against the defendant's testator under G. L. (Ter. Ed.) c. 191, § 13, or whether such a remedy is exclusive. This is because whatever the remedy, by statute or at common law, the decisive issue is whether it survived. This involves first a determination whether the cause of action sounds in contract or in tort. We are of opinion that it sounds in tort. No consideration for any contract is alleged. The plaintiffs were not parties to any agreement with Mr. Lovering, but could be, at most, third party beneficiaries. See *Cain's Lobster House, Inc.* v. *Cain,* 312 Mass. 512, 516, and cases cited. We cannot accept the argument of the plaintiffs that § 13 created a direct right in them or privity of contract with the testatrix. Furthermore, if there be a remedy under § 13, the statutory phrase, "if a person neglects without reasonable cause," is appropriate to describe a remedy in tort but not to describe a remedy in contract. The ancestor statutes of § 13 punished failure to deliver a will by forfeiture of a fixed penalty, the amount of which depended on the length of the delay. See Prov. St. 1692–3, c. 14, § 2; St. 1783, c. 24, § 16; St. 1817, c. 190, § 32. Such a provision tends to show that the duty imposed was noncontractual.

Another question argued we likewise need not resolve. This is whether the remedy under G. L. (Ter. Ed.) c. 191, § 13, is exclusive. In *Thayer* v. *Kitchen,* 200 Mass. 382, 386, there was a reference to § 14, R. L. c. 135, a predecessor of c. 191, § 13, which dealt with proceedings against persons for retaining or concealing wills, and it was intimated that the statutory relief was exclusive. In *Sawyer* v. *Old Lowell Natl. Bank,* 230 Mass. 342, 345–346, it was assumed, without deciding, "that the remedy provided by R. L. c. 135, § 14, in favor of persons aggrieved by the unreasonable neglect of the possessor of a will to deliver it into the Probate Court, is not exclusive."

We are of opinion that whatever the remedy it would not survive. In *Putnam* v. *Savage,* 244 Mass. 83, 85, it was said through Rugg, C.J., "At common law a right of action for tort does not survive the death either of the person in-

jured or of the wrongdoer. . . . Resort therefore must be had to the general provisions of the statutes as to survival of actions to ascertain whether this action survives the death of the wrongdoer. If no survival is wrought by statute, the action must abate." See *Osterlind* v. *Hill,* 263 Mass. 73, 75.

General Laws c. 228, § 1 (as amended through St. 1934, c. 300, § 1), provides in part: "In addition to the actions which survive by the common law, the following shall survive: . . . (2) Actions of tort . . . (d) for damage to real or personal property."

In *Connors* v. *Newton Natl. Bank,* 336 Mass. 649, it was held that a cause of action against an attorney at law for negligence in the prosecution of a claim did not survive under the statute just quoted. In *Jenks* v. *Hoag,* 179 Mass. 583, it was held that even if an action lies against an attorney for conspiring with a client under examination as a poor debtor to prevent, by false testimony of the client, money from being taken on execution, such action does not survive as being an action "for damage done to real or personal estate." At page 586, it was said, "The statute was intended to give a remedy which should survive only for injuries of a specific character 'to real or personal estate.' In . . . the present case there was no damage done to the judgment, considered as a specific part of the property of the plaintiff's intestate. The judgment was entirely unaffected by the defendant's alleged wrong. The wrong was not directed towards the judgment itself. At the most, it merely rendered ineffectual one of the methods by which the creditor hoped to collect the judgment." See *Bailey* v. *Powell,* 239 Mass. 110, 113.

These are more recent applications of the rule announced in *Read* v. *Hatch,* 19 Pick. 47, which was an action for fraudulently inducing the plaintiffs to sell goods to a third party on credit. In holding that the action did not survive, it was said by Chief Justice Shaw (pp. 47–48): "It is contended that a false representation, by which one is induced to part with his property, by a sale on credit to an insolvent person,

by means of which he is in danger of losing it, is a damage done to him in respect to his personal property. But we are of opinion that this would be a forced construction, and not conformable to the intent of the statute. If this were the true construction, then every injury by which one should be prevented from pecuniary gain, or subjected to pecuniary loss, would, directly or indirectly, be a damage to his personal property. But we are of opinion that it must have a more limited construction, and be confined to damage *done* to some specific personal estate, of which one may be the owner. A mere fraud or cheat, by which one sustains a pecuniary loss, cannot be regarded as a damage done to personal estate.''

In the case at bar there was negligence but no fraud. There was no damage to property of the estate of Mary Gallagher. The conduct of Mr. Lovering did not diminish the amount of her estate by its interference with the plaintiffs' collection of their legacies. Contrary to the plaintiffs' contention, our cases are clear that such interference did not constitute damage to specific personal property of theirs.

The demurrers were rightly sustained. In each case, let the entry be

*Order sustaining demurrer affirmed.*