PHILIP J. McSTOWE vs. COLEMAN L. BORNSTEIN &
another,[1] administrators.

Suffolk. January 5, 1979. — April 12, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Survival of Action. Attorney at Law. Negligence,* Attorney.

A claim for breach of an attorney's obligation to use reasonable care
in his representation of the plaintiff survived the death of the attor-
ney. [806-809]

CIVIL ACTION commenced in the Superior Court on July
8, 1976.

The case was heard by *Donahue,* J., on a motion to
dismiss, and was reported by him to the Appeals Court.
The Supreme Judicial Court granted a request for direct
review.

*W. Thomas Smith* for the plaintiff.
*David A. Barry* for the defendants.

WILKINS, J. The plaintiff sued the representatives of
the estate of an attorney, alleging that the attorney negli-
gently had failed to commence an action on behalf of the
plaintiff before the statute of limitations barred that ac-
tion. The defendants moved for judgment on the plead-
ings (Mass. R. Civ. P. 12[c], 365 Mass. 754 [1974]) on the
ground that the plaintiff's claim did not survive the death
of the attorney. Concluding that he was bound by prior
decisions of this court, a Superior Court judge allowed the
defendants' motion. However, the judge believed it time
for "a fresh look at the issues presented by this case," and
he reported the matter to the Appeals Court pursuant to
Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We allowed the

---

[1] Robert Cohen.

plaintiff's application for direct appellate review. The basic question is whether the plaintiff's claim against the attorney survived the attorney's death.[2] We hold that it did.

The essential allegations of the complaint may be stated briefly. In August, 1971, the plaintiff was injured as a result of the gross negligence of the operator of a motor vehicle in which the plaintiff was a passenger. Early in 1972, the plaintiff retained the services of Mr. Maynard G. Evans, a member of the bar of the Commonwealth, to pursue his rights against the operator and the owner of the motor vehicle. Mr. Evans undertook to represent the plaintiff. He was careless and negligent in

[2] The judge has reported four questions to us. He might simply have reported the question whether his order allowing the motion to dismiss was proper. See *Liberty Mut. Ins. Co.* v. *Westerlind,* 374 Mass. 524 (1978). That question certainly appears to have been, in the judge's opinion, "an interlocutory ... order" which "so [affected] the merits of the controversy that the matter ought to be determined by the appeals court before any further proceedings in the trial court." G. L. c. 231, § 111, as appearing in St. 1973, c. 1114, § 199. Mass. R. Civ. P. 64, 365 Mass. 831 (1974). Indeed, without his action in reporting the case, his allowance of the motion would have been followed by entry of a judgment for the defendants. Although a judge may report specific questions of law in connection with an interlocutory finding or order, the basic issue to be reported is the correctness of his finding or order. Reported questions need not be answered in this circumstance except to the extent that it is necessary to do so in resolving the basic issue. See *Scandura* v. *Trombly Motor Coach Serv., Inc.,* 370 Mass. 612, 615-616 (1976); *Mayer* v. *Boston Metropolitan Airport, Inc.,* 355 Mass. 344, 351 (1969).

The four questions reported are:

"1. Is an action for legal malpractice based on breach of an express or implied contract?

"2. Could an action for legal malpractice be held to survive on a theory of fraudulent breach of a fiduciary duty?

"3. Does the survival statute, G. L. c. 228, sec. 1, as drafted by the legislature and applied by the court, violate the United States Constitution or the Declaration of Rights of the Commonwealth of Massachusetts?

"4. Does a cause of action against an attorney for negligence in failing to commence an action on behalf of his client within the time provided by the applicable statute of limitations, survive the death of the attorney?"

representing the plaintiff and failed, within the time prescribed by law, to commence an action against the operator and the owner of the motor vehicle. The plaintiff claimed damages equivalent to those he would have recovered for the personal injuries sustained in the August, 1971, motor vehicle accident. Mr. Evans died on November 4, 1975. The complaint in this case was filed on July 8, 1976. It does not allege when the plaintiff first learned that Mr. Evans had not seasonably commenced the motor vehicle tort action.

The defendants rest their argument that the plaintiff's claim did not survive the attorney's death on principles of the common law and on the inapplicability of G. L. c. 228, § 1, as amended through St. 1975, c. 377, § 62, which reads in part: "In addition to the actions which survive by the common law, the following shall survive: ... (2) Actions of tort (a) for assault, battery, imprisonment or other damage to the person ... or (d) for damage to real or personal property ...." In particular, the defendants rely on our decision in *Connors* v. *Newton Nat'l Bank*, 336 Mass. 649 (1958), a tort action based on the negligence of a deceased attorney, where we held that the claim did not survive by the common law and did not survive under G. L. c. 228, § 1, because the plaintiff was not seeking damages to her person or to her property.[3]

In this Commonwealth, the view has been that actions of contract survive by the common law (*Sliski* v. *Krol*, 361 Mass. 313, 315 [1972] [death of plaintiff's decedent];

---

[3] A review of the papers in the *Connors* case shows that the declaration referred to the action as one in tort and that the plaintiff's brief asserted no claim based on any contractual obligation. This court construed the declaration as presenting only a claim based on the attorney's negligent failure to give the timely statutory notice required to prosecute the plaintiff's claim for injuries sustained on snow and ice. The only relevant argument advanced by the plaintiff in that case was that she sustained "damage to ... personal property" within the meaning of G. L. c. 228, § 1.

*Treasurer & Receiver Gen.* v. *Sheehan,* 288 Mass. 468, 471 [1934] [cause of action on implied or quasi contract survives death of defendant's testate]), but actions of tort do not (*Gallagher* v. *First Nat'l Bank,* 346 Mass. 587, 589-590 [1964]; *Connors* v. *Newton Nat'l Bank, supra* at 649; *Jenks* v. *Hoag,* 179 Mass. 583, 585 [1901]). See *Cameron* v. *Sullivan,* 372 Mass. 128, 133 n.6 (1977); *Griffiths* v. *Powers,* 216 Mass. 169, 170 (1913).

A client's claim against an attorney has aspects of both a tort action and a contract action. Most legal malpractice cases in Massachusetts have been brought as tort actions. In addition to *Connors* v. *Newton Nat'l Bank, supra,* see *McLellan* v. *Fuller,* 226 Mass. 374 (1917); *Whitney* v. *Abbott,* 191 Mass. 59 (1906); *Wilson* v. *Coffin,* 2 Cush. 316 (1848) (action on the case); *Salisbury* v. *Gourgas,* 10 Met. 442 (1845) (action on the case); *Dearborn* v. *Dearborn,* 15 Mass. 316 (1818) (action on the case); *Gilbert* v. *Williams,* 8 Mass. 51 (1811). See also *Madden* v. *Palmer,* 371 Mass. 894 (1976). But see *Varnum* v. *Martin,* 15 Pick. 440 (1834) (assumpsit on an implied promise). However, in *Drury* v. *Butler,* 171 Mass. 171 (1898), without discussion of the question of the survival of the claim, recovery was allowed in an action of contract against the administrators of the estate of a deceased attorney for the attorney's negligent failure to commence an action within the period of the statute of limitations. In *Griffiths* v. *Powers,* 216 Mass. 169 (1913), the plaintiff successfully maintained an action of contract against the executor of the will of an attorney. The question whether the contract action survived the attorney's death was not raised, but the court's analysis assumed implicitly that it did. *Id.* at 170. The only question was whether the statutory "forfeiture" of fivefold interest for failure to pay over money collected in behalf of a client could be imposed in an action of contract rather than tort. In *Hendrickson* v. *Sears,* 365 Mass. 83, 84 (1974), we stated that the plaintiff need not choose between the labels of "tort" and "contract" in bringing a legal malpractice suit and added that,

"[t]he traditional view of an action for damages resulting from the negligence of an attorney is that the gist of the action, regardless of its form, is the attorney's breach of contract." *Id.* at 86.

The general rule elsewhere has been that an action for malpractice may be brought against the estate of a deceased attorney. See Annot, 65 A.L.R. 2d 1211 (1959). See also *McGill* v. *Lazzaro*, 62 Ill. App. 3d 151 (1978). It has been suggested in a recent article, written by counsel for the defendants in this case, that "a client seeking to recover for legal malpractice against the estate of his deceased attorney must sue in contract rather than in tort." Barry, Legal Malpractice in Massachusetts, 63 Mass. L. Rev. 15, 19 n.51 (1978).

We have looked with disfavor on rigid procedural distinctions between contract and tort and are more concerned today with substance than with form. See, e.g., *Mechanics Nat'l Bank* v. *Killeen, ante* 100, 115 (1979); *Hendrickson* v. *Sears*, 365 Mass. 83, 84 (1974). We conclude, consistent with earlier opinions of this court, that the existence of a contractual relationship between the plaintiff and the deceased attorney permits the plaintiff's claim against the attorney to survive the attorney's death. We rest our decision on the ground that contract actions survive a defendant's death by the common law. We need not consider whether, in any respect, the Legislature intended G. L. c. 228, § 1, to bar this court from the exercise of its normal function of evolving common law principles.[4] See *Hannigan* v. *New Gamma-Delta Chapter*

---

[4] In recent years, particularly, "[t]his court has frequently had occasion to effect through its decisions not insignificant changes in the field of tort law." *Lewis* v. *Lewis*, 370 Mass. 619, 628 (1976), and cases cited. See cases cited in *Hannigan* v. *New Gamma-Delta Chapter of Kappa Sigma Fraternity, Inc.*, 367 Mass. 658, 661 n.1 (1975). See also *Dziokonski* v. *Babineau*, 375 Mass. 555, 556 (1978) (abandoning the "impact" rule of *Spade* v. *Lynn & Boston R.R.*, 168 Mass. 285, 290 [1897]). Compare our opinions concerning governmental immunity, where our power to act to abrogate the doctrine was recognized (*Whitney* v. *Worcester*, 373 Mass. 208, 209-210 [1977]; *Hannigan* v. *New*

*of Kappa Sigma Fraternity, Inc.,* 367 Mass. 658, 661 (1975). It may be that in enacting G. L. c. 228, § 1, the Legislature intended to do no more than simply add to the list of actions which survived, and thus it did not impliedly express a restriction on continuing development of common law principles.

Under principles of notice pleading (see *Nader* v. *Citron,* 372 Mass. 96, 98 [1977]), the plaintiff's complaint adequately presents a claim for the breach of the attorney's contractual obligation to use reasonable care in his representation of the plaintiff.

We acknowledge that this decision may raise the question of which statute or statutes of limitations apply to an action against an attorney, a matter which, in the medical malpractice field, has been resolved by statute. See G. L. c. 260, § 4 (three-year period of limitation regardless of whether claim is based on tort or contract). No issue of the statute of limitations is involved in this case at this stage.[5]

The order allowing the defendants' motion for judgment on the pleadings is vacated, and the case is remanded to the Superior Court for further proceedings.

*So ordered.*

---

*Gamma-Delta Chapter of Kappa Sigma Fraternity, Inc., supra* at 659; *Morash & Sons, Inc.* v. *Commonwealth,* 363 Mass. 612, 624 [1973]), and this court's opinion concerning its intention to abolish the doctrine of charitable immunity (*Colby* v. *Carney Hosp.,* 356 Mass. 527, 528 [1969]). See now as to governmental immunity G. L. c. 258, as appearing in St. 1978, c. 512, § 15, and as to charitable immunity G. L. c. 231, § 85K, inserted by St. 1971, c. 785, § 1.

[5] In *Hendrickson* v. *Sears,* 365 Mass. 83 (1974), the action was commenced seasonably under either statute of limitations. We noted as intrinsically sound the proposition "[t]hat limitation statutes should apply equally to similar facts regardless of the form of proceeding." *Id.* at 85. See *New Bedford* v. *Lloyd Inv. Assocs.,* 363 Mass. 112, 120 (1973). The subject of statutes of limitations applicable to malpractice actions against attorneys appears worthy of legislative attention. See Barry, Legal Malpractice in Massachusetts, 63 Mass. L. Rev. 15, 20 (1978).