Zobel, J.
The question is whether a statute partly abrogating the common-law rule against survival of actions, G.L.c. 228, §1, bars claims for negligence, fraud, indemnification triggered by wrongful conduct, and unfair and deceptive acts, G.L.c. 93A.
Plaintiffs here sold material on credit to Foremost Printing Office Service, Inc. (“Foremost”), whose accountant, Defendant/Third-Party Plaintiff, Rodman & Rodman, P.C. (“Rodman”), prepared financial statements which Plaintiffs allege contained misrepresentations on which they relied to their loss.
Jack L. Badler (“Badler”), Foremost’s CEO and CFO, resigned in 1997 to form and operate The Badler Group, Inc. (“Badler Group”), which later agreed to provide Foremost with a financial management package: accounting, bookkeeping, purchasing, invoicing, accounts payable, credit, collection and banking relationship services. In time, Badler and Badler Group prepared financial statements which Rodman audited.
Darcy Badler is the executrix of Badler’s estate (“Badler Estate,” collectively with Badler group, “Badler Interests”), against which Rodman is claiming contribution and indemnification. Plaintiffs have also asserted a direct claim against Badler, alleging misrepresentation and statutory violations, G.L.c. 93A, §§2, 11.
The Badler Interests argue that because the statute says nothing about misrepresentation, negligence, and indemnity, those claims should be dismissed. Plaintiffs and Rodman concede the statute’s silence, but urge against an overly narrow reading.
“In addition to the actions which survive by the common law,” the statute permits certain listed acts to survive:
(1) Actions [for replevin]
(2) Actions of tort (a) for assault, battery, imprisonment or other damage to the person: (b) for consequential damage arising out of injury to the persons and consisting of expenses incurred by a husband, wife, parent or guardian for medical, nursing, hospital or surgical services in connection with or on account of such injury; c) for goods taken or carried away or converted or (d) for damage to real or personal property; and
(3) Actions against sheriffs for the misconduct or negligence of themselves or their deputies.
Is the statute declaratory of the common law? That is, does it in effect permanently exclude any unenumerated claims? If the courts were so to change the “common law” that claims which, at the time the legislature spoke, did not “survive by the common law” achieved survivability, would the revised “common law” be read into the statute?
At common law, tort claims generally abated upon the death of a party, Putnam v. Savage, 244 Mass. 83, 85 (1923); contract claims usually survived, McStowe v. Bornstein, 377 Mass. 804, 808 (1979).
A claim’s viability, therefore, often hinges on the existence of a contractual relationship, id.; see also Sliski v. Krol, 361 Mass. 313, 315 (1972). Malpractice claims against attorneys, for example, often survive as contract claims. “A client’s claim against an attorney *151 has aspects of both a tort action and a contract action,” McStowe v. Bornstein, supra, at 807. The underlying contractual relation permits attorney malpractice claims to outlive the offending lawyer.
Similarly, a “malpractice" (i.e., professional negligence) claim may lie against other specialists, including financial managers performing accounting duties, see, e.g. Nycal Corp. v. KPMG Peat Marwick, LLP, 426 Mass. 491, 495-97 (1998).
Here, the decedent Badler rendered financial management services (including accounting) for Rodman. As financial manager and accountant, he was entrusted with the care, custody, and control of the client’s money. Rodman was entitled to rely on Badler’s faithful performance. Thus its acceptance of the Badler work product was entirely appropriate, absent any reason to doubt Badler’s fidelity.
Rodman’s claims based on negligence and indemnity should therefore survive. The Chapter 93A claims, however, resting as they do on a tort theory, see, Glickman v. Brown, 21 Mass.App.Ct. 229, 234 (1985), do not survive.
This leaves Plaintiffs direct claim of misrepresentation. The statute’s muteness is not dispositive; the roster of “common law” actions which survive is by no means static: the “Legislature must have meant ‘common law’ as it evolves in the courts subsequent to the enactment of this statute,” Harrison v. Loyal Protective Life Insurance Co., 379 Mass. 212, 215 (1979).
Harrison interpreted “damage to the person” to subsume the tort of intentional infliction of emotional distress, an exercise which differs from actually expanding the “common law” protected category. Over the years, the Supreme Judicial Court has rejected several opportunities to enlarge the list, Pine v. Rust, 404 Mass. 411, 417-18 (1988) (illegal wiretapping and eavesdropping); Gallagher v. First National Bank of Boston, 346 Mass. 587, 589 (1964) (possessing will and failing to produce it for probate); Connors v. Newton National Bank, 336 Mass. 649, 650 (1958) (attorney’s failure to prosecute personal injury claim).
The applicable principle seems to be that the charmed circle opens only to those claims which merely expand existing categories, see Harrison v. Loyal Protective Life Insurance Co., supra, at 214. Plaintiffs here fail because misrepresentation (fraudulent or otherwise) does not analogize to or enlarge any enumerated claim. (The closest possibility, “damage to real or personal property,” requires injury to something tangible, see, Piper v. Childs, 290 Mass. 560, 565 (1935).) Moreover, an action seeking mere damages for fraud abates upon the death of the party, as does an action for deceit, Houghton v. Butler, 166 Mass. 547, 549 (1896); but see, Metropolitan Life Insurance Co. v. DeNicola, 317 Mass. 416, 419-20 (1944) (right to annul contract for fraud or mistake entails equitable relief). Only if the fraud arose in the context of a breach of fiduciary duty or contractual right can the claim survive, Warren v. Para Rubber Shoe Co., 166 Mass. 97, 104 (1896).
Indeed, the legislature may have intended that the defendant’s death abate “fraud by misrepresentation,” see, Judicial Council, Fifth Report, 15 Mass. L.Q. No. 2, p. 25, urging amendment of the statute to keep such claims alive.
Third-party defendant’s (Badler’s) motion for summary judgment against Plaintiffs may be granted. Third-party defendant’s motion for summary judgment against defendant (Rodman) may be denied.
ORDER
Accordingly, it is Ordered, that the Motion of Third-Party Defendant Darcy Badler, Executrix, for Summary Judgment against Plaintiff be, and the same hereby is, Allowed; and it is
Further Ordered, that the Motion of Third-Party Defendant Darcy Badler, Executrix, for Summary Judgment against Defendant/Third-Party Plaintiff be, and the same hereby is, Denied.