NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12786

COMMONWEALTH  vs.  LUIS CLAUDIO.


Hampden.     December 9, 2019. - February 28, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.


Controlled Substances.  Practice, Criminal, Plea, Sentence, Conduct of government agents.  Supreme Judicial Court, Superintendence of inferior courts.



Indictments found and returned in the Superior Court Department on November 21, 2013.

A motion for protections from harsher punishment in conjunction with a motion to withdraw a guilty plea was heard by Mark D. Mason, J., and a question of law was reported by him to the Appeals Court.

The Supreme Judicial Court granted an application for direct appellate review.


Andrew P. Power for the defendant.
John A. Wendel, Assistant District Attorney, for the Commonwealth.
David Rangaviz, Committee for Public Counsel Services, Anthony D. Mirenda, Caroline S. Donovan, Christopher E. Hart, Samuel C. Bauer, Emily J. Nash, & Rachel Davidson, for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

BUDD, J. This is yet another in a series of decisions in which we contend with the consequences of the evidence tampering committed over the course of several years by Sonja Farak, a chemist at the State Laboratory Institute at the University of Massachusetts at Amherst (Amherst lab). Here, we address one of the ripple effects generated by the Amherst lab scandal: a guilty plea negotiated by a defendant who qualified for an enhanced sentence due to a subsequently vacated predicate offense that had been tainted by Farak's misconduct (Farak-related predicate offense). We are asked to determine whether such a defendant may challenge the guilty plea without being exposed to a harsher sentence than that which he received in exchange for his plea, given that the Farak-related predicate offense has been vacated. We conclude that the answer is yes.[1]

Background. 1. Facts and prior proceedings. In 2013, the defendant, Luis Claudio, was indicted on two counts alleging aggravated statutory rape pursuant to G. L. c. 265, § 23A. In addition, he was indicted as a habitual criminal pursuant to G. L. c. 279, § 25 (a), with two drug offenses on his prior record as the predicate convictions. General Laws c. 279, § 25 (a), the habitual criminal statute, "requires that a 'habitual

---

[1] We acknowledge the amicus brief submitted by the Massachusetts Association of Criminal Defense Lawyers.

criminal' -- a defendant who has been convicted of a felony and has two prior convictions resulting in State or Federal prison sentences of three years or more -- be sentenced to the maximum term provided by law on the underlying conviction." Commonwealth v. Ruiz, 480 Mass. 683, 683-684 (2018). As G. L. c. 265, § 23A, carries a maximum penalty of life in prison, the defendant was exposed to a mandatory life sentence for a conviction on the aggravated rape charges. In 2015, the defendant accepted a negotiated plea agreement under which he pleaded guilty to lesser charges[2] without the habitual offender enhancements, and received a prison sentence of from six to eight years followed by ten years of probation.

In 2018, the defendant was identified as a so-called "Farak defendant."[3] His conviction of possession with intent to distribute heroin, based on certificates of drug analysis (drug certificates) signed by Farak, was, therefore, dismissed with prejudice. As the vacated conviction was one of the two

---

[2] The defendant pleaded guilty to statutory rape pursuant to G. L. c. 265, § 23, and indecent assault and battery on a child under fourteen years of age pursuant to G. L. c. 265, § 13B.

[3] Farak defendants are those who were convicted on a drug charge where Farak signed a certificate of drug analysis; the conviction was based on methamphetamine that was tested during Farak's tenure at the Amherst lab; or the drugs were tested at the Amherst lab between January 1, 2009, and January 18, 2013, regardless of who signed the certificate of analysis. Committee for Pub. Counsel Servs. v. Attorney Gen., 480 Mass. 700, 734-735 (2018).

predicate offenses relied on for application of the habitual criminal enhancement, the defendant no longer qualified as a habitual criminal.

Before seeking to withdraw his guilty plea, which was negotiated in circumstances that now no longer exist, the defendant requested a preliminary ruling from the Superior Court judge that if he were to succeed in withdrawing his plea, he would not be subject to a harsher punishment as the result of a reprosecution of the rape charges than the prison sentence that he received pursuant to the plea agreement.[4]  The Superior Court judge subsequently reported the following question to the Appeals Court, pursuant to Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004):  "Do the protections from harsher punishment established for 'Dookhan defendants'[5] in [Bridgeman v. District Attorney for the Suffolk Dist., 471 Mass. 465 (2015) (Bridgeman

_____

[4] The two aggravated rape charges each carry a minimum mandatory sentence of ten years which could be imposed consecutively.  See G. L. c. 265, § 23A.

[5] Annie Dookhan was a chemist who engaged in widespread evidence tampering at the William A. Hinton State Laboratory Institute in the Jamaica Plain section of Boston (Hinton lab). The evidence tampering affected tens of thousands of defendants with drug convictions based on evidence tested at the Hinton lab.  See Bridgeman v. District Attorney for the Suffolk Dist., 476 Mass. 298, 301-303 (2017) (Bridgeman II).

Dookhan defendants include those whose drug convictions relied on drug certificates signed by Dookhan as a primary or secondary chemist.  See Commonwealth v. Scott, 467 Mass. 336, 354 (2014).

I),][6] apply to 'Farak defendants' who are challenging pleas based upon Farak-related grounds relating to G. L. c. 279, [§ 25 (a)], predicate offenses?" We allowed the defendant's application for direct appellate review and now broaden the question to include any Farak-related predicate offenses that resulted in enhanced sentences on subsequent convictions. See Commonwealth v. Martinez, 480 Mass. 777, 783 (2018), quoting McStowe v. Bornstein, 377 Mass. 804, 805 n.2 (1979).

2. Overview of the remedies for the misconduct of Dookhan and Farak. Because the reported question involves a Farak defendant and references a remedy provided to qualifying Dookhan defendants, to answer it we must review the remedies provided to each category of defendants.[7]

a. Remedy for Dookhan defendants. Dookhan, whose wrongdoing at the William A. Hinton State Laboratory Institute in the Jamaica Plain section of Boston (Hinton lab) was first discovered in June 2011, was found to have engaged in egregious

---

[6] As discussed infra, in Bridgeman I, 471 Mass. at 477, we held that defendants who were granted a new trial based on Dookhan's misconduct would not be faced with a more serious offense or be given a more severe sentence than he or she initially received.

[7] We previously recounted details of the wrongdoing in connection with Dookhan and Farak. See, e.g., Committee for Pub. Counsel Servs., 480 Mass. at 705-720; Bridgeman II, 476 Mass. at 301-303. We will not repeat them here except to the extent necessary to explain the difference between the remedies offered to Dookhan defendants and Farak defendants.

misconduct over the course of two to three years by, among other things, making "a number of affirmative misrepresentations by signing drug certificates and testifying to the identity of substances in cases in which she had not in fact properly tested the substances in question." Commonwealth v. Scott, 467 Mass. 336, 348 (2014). In fashioning a remedy for Dookhan defendants (who numbered in the thousands), we ultimately declined to vacate their convictions wholesale, reasoning that as "serious as [Dookhan's conduct] was, [it] did not result in irremediable harm" to defendants' opportunities to obtain fair trials (quotation and citation omitted). Bridgeman v. District Attorney for the Suffolk Dist., 476 Mass. 298, 322 (2017) (Bridgeman II). Further, "given the absence of any evidence of misconduct by a prosecutor or an investigator, [we did not] place Dookhan's misconduct in the category that requires a stronger deterrent than a new trial to avoid the risk of repetition." Id.

Instead, using our general power of superintendence, we developed a framework to ascertain whether a Dookhan defendant was entitled to a new trial on his or her drug conviction. See Scott, 467 Mass. at 352. Ordinarily, a defendant is entitled to withdraw a guilty plea by demonstrating that (1) egregious government misconduct took place in connection with the defendant's case and preceded the entry of the guilty plea; and

(2) the misconduct was material to the defendant's decision to plead guilty.  Id. at 346, citing Ferrara v. United States, 456 F.3d 278, 290 (2006).  We determined that given the nature of Dookhan's misconduct, Dookhan defendants would be able to establish the first prong of the Ferrara analysis simply by furnishing a drug certificate that she signed.  Scott, supra at 353.  These defendants still would have to meet the second prong of the test, that is, to demonstrate that the misconduct influenced the decision to plead guilty.  Id. at 354.

As discussed in more detail infra, we also held that any Dookhan defendant who succeeded in securing a new trial could not be charged with a more serious offense, nor receive a longer sentence than originally imposed (Bridgeman cap).  Bridgeman I, 471 Mass. at 477.

b.  Remedy for Farak defendants.  The Amherst lab scandal was larger in scope than Dookhan's wrongdoing at the Hinton lab. Over the course of more than eight years, among other misdeeds, Farak stole from the Amherst lab's stock of known methamphetamine "standards" used for comparison with alleged drugs.  Committee for Pub. Counsel Servs. v. Attorney Gen., 480 Mass. 700, 706-707 (2018).  She then turned to tampering not only with drug samples assigned to her, but also with other chemists' samples, stealing illegal narcotics submitted to the Amherst lab for testing to fuel her own drug habit.  Id. at 707-

709.  She also manipulated evidence and reports to conceal these activities.  Id. at 708-709.  This misconduct was compounded by the wrongful actions of members of the Attorney General's office, who failed to investigate thoroughly Farak's wrongdoing and later deliberately withheld information.  Id. at 711-720.

Consequently, in contrast to the remedy created for Dookhan defendants, we determined that for Farak defendants the "very strong medicine of dismissal with prejudice [was] required." Id. at 725.  We therefore again exercised our broad powers of superintendence to vacate and dismiss with prejudice thousands of drug convictions that relied on evidence tested at the Amherst lab during Farak's tenure there based on certain criteria.  Id. at 729.

Discussion.  Although the convictions based on Farak's misconduct (Farak convictions) have been dismissed with prejudice, there is a category of Farak defendants for whom the dismissed convictions nevertheless continue to have an adverse effect.  That is, there are some defendants, like the defendant here, for whom a Farak conviction was counted as a predicate for enhanced sentencing on subsequent charges prior to its dismissal.  As such, the now vacated convictions exposed this category of defendants to enhanced penalties.  We conclude that such a result cannot stand.

In Bridgeman I, 471 Mass. at 475, we acknowledged that "[i]n the ordinary course, when a defendant withdraws [a] [guilty] plea after sentencing, [the defendant] may receive a harsher sentence than was originally imposed" (citation and quotations omitted).  However, we also recognized that, in the circumstances of the so-called Dookhan cases, "[a] return to the status quo ante would mean ignoring the egregious misconduct of Dookhan and disregarding its impact on criminal defendants whose drug samples she analyzed."  Id.  In exercising our powers of superintendence to hold that any potential sentence for a Dookhan defendant who was granted a new trial would be capped at the sentence originally imposed, we reasoned that without such a cap, a Dookhan defendant would be forced to bear the burden of the government's misconduct.  Id. at 475-476.  That is, the Dookhan defendant would be placed in the untenable position of either accepting a tainted conviction, or successfully withdrawing a guilty plea and risking a greater punishment in so doing.  Id.

In addition, we recognized that a Dookhan defendant who pleaded guilty and subsequently sought to withdraw a plea in favor of moving for a new trial should not lose the benefit of the agreement that the Dookhan defendant had made where government misconduct would be the reason for seeking a new trial in the first place.  Id. at 477.  In essence, without a

cap in place, the Commonwealth would have the advantage of getting a "second bite at the proverbial apple in its efforts to convict" a Dookhan defendant who won a new trial. Id. We ultimately concluded that it would be wrong for Dookhan defendants to bear the burden "of a systemic lapse that, in the circumstances of the Hinton drug lab, we have said is entirely attributable to the government, even though there is no indication that prosecutors had actual knowledge of Dookhan's misconduct during their prosecutions of the Dookhan defendants." Id. at 476.

In comparison, the government misconduct associated with the Amherst lab occurred over a longer period of time, affected more defendants, and, unlike the Hinton lab scandal, did include wrongdoing by prosecutors. See Committee for Pub. Counsel Servs., 480 Mass. at 725. The remedy that we determined was required as a result -- dismissal of the affected convictions with prejudice -- was unprecedented in its scope.

Because the Farak convictions were dismissed with prejudice, the sentencing cap that we created for Dookhan defendants (who can be retried) is not applicable. However, just as we concluded that a cap on subsequent charges and sentences was appropriate for Dookhan defendants who are retried on dismissed drug charges, we now conclude that a similar cap is required in the case of Farak defendants who have been

negatively affected, albeit indirectly, by the use of the convictions, tainted by Farak, as predicates for enhanced sentencing.

There is no principled reason why a Farak defendant who has been collaterally affected by more egregious government misconduct should have to choose between accepting an outcome based on a conviction that no longer exists and exposing himself or herself to a harsher punishment than initially was imposed.[8] The Appeals Court has recognized, in the context of the Ferrara-Scott standard for obtaining new trials, that misconduct in obtaining a conviction can taint the validity of subsequent pleas predicated on the original misconduct. See Commonwealth v. Williams, 89 Mass. App. Ct. 383, 389-390 (2016) ("To the extent the defendant's plea resulted from a desire to avoid [an elevated] sentence that would not have been permitted after the [Dookhan-related] predicate offense was vacated, the defendant's decision to plead guilty was not a correctly informed one"). See also Commonwealth v. Wallace, 92 Mass. App. Ct. 7, 12 (2017)

---

[8] The sentencing cap for a defendant who succeeds in withdrawing a guilty plea where a Farak-related predicate offense exposed the defendant to an enhanced sentence will only apply in a case where Farak's misconduct had a significant, nonattenuated impact on the subsequent plea. This is because, as discussed supra, one of the prongs a defendant must satisfy to withdraw a guilty plea based on government misconduct is that such misconduct was material to the decision to plead guilty. See Scott, 467 Mass. at 346.

(acknowledging that "governmental misconduct in one case could contaminate another case").

We cannot allow the damaging effects of the government's egregious misconduct in Farak-related cases to live on, even as the tainted convictions have been vacated, in the form of predicates for enhanced sentences on subsequent charges. For much the same reasons we created the Bridgeman cap for Dookhan defendants who withdraw their pleas to Dookhan-related convictions, we here apply an analogous cap to Farak defendants who succeed in withdrawing guilty pleas where they were charged with enhanced sentences predicated on now-vacated Farak convictions.

We further conclude that this cap must be applied retroactively for defendants who have already withdrawn such pleas and subsequently pleaded guilty to more serious charges, who were convicted of more serious charges at a trial, or who received longer sentences than they had for their first pleas. See Commonwealth v. Camacho, 483 Mass. 645, 650-651 (2019) (applying Bridgeman cap retroactively in discretionary exercise of superintendence powers). Just as we observed with respect to Dookhan defendants, those Farak defendants who already may have moved to withdraw their guilty pleas should not be placed "in a substantively worse position" than those who withdraw their pleas after this case is released. See id. at 651.

Conclusion. In Scott, 467 Mass. at 352, we recognized that Dookhan's misconduct "cast a shadow over the entire criminal justice system." In comparison, the government misconduct committed by Farak and members of the Attorney General's office cast a shadow even longer and darker. In a continuing effort to remedy that misconduct, we conclude that any potential sentence on retrial for a defendant for whom a Farak conviction served as a predicate offense for an enhanced penalty must be capped at the sentence originally imposed when the defendant initially pleaded guilty.[9]

The case is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.

---

[9] Should the defendant here move to withdraw his plea, the motion would require independent analysis. We express no opinion as to the merits of such a motion. See Scott, 467 Mass. at 346.