NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1298

EDWARD P. O'NEIL, THIRD, & another[1]

vs.

LOUISE A. GAUDET[2] & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Edward O'Neil, III, and E.P. Snyder

Enterprise Inc., allege that defendants Louise A. Gaudet, both

individually and in her capacity as personal representative of

the estate of Charles E. (Charlie) Gaudet[4] and in her capacity as

the trustee of three realty trusts, and Birch Hollow, LLC,

---

[1] E.P. Snyder Enterprise Inc.

[2] Individually, as personal representative of the estate of Charles E. Gaudet, and as trustee of the 46 Pleasant Street Realty Trust, the 58 Tenney Road Realty Trust, and the 5 Makepeace Road Realty Trust.  Charlie Gaudet passed away in 2023.

[3] Birch Hollow, LLC, and Douglas E. Hausler.

[4] Because Louise and Charles Gaudet share a surname, we refer to Louise by her first name and Charles by his nickname, Charlie.

(collectively with Charlie, who was a defendant in the case before his decease, Gaudet defendants) committed a breach of oral agreements concerning the purchase and development of properties in Westford that attorney Douglas Hausler, who is also a defendant, facilitated by representing both parties. The plaintiffs now attempt to appeal from (1) a Superior Court judge's order vacating a preliminary injunction and dissolving a memorandum of lis pendens, which plaintiff O'Neil obtained against the Gaudet defendants, and (2) the decision of a single justice of this court refusing to grant relief from those orders. The plaintiffs also appeal from a separate and final judgment dismissing all of their claims against Defendant Hausler. We dismiss the appeal from the Superior Court decision concerning the preliminary injunction and lis pendens, and we affirm the judgment dismissing the claims against Hausler. The plaintiffs did not file a valid notice of appeal from the single justice order, and the arguments regarding that order are not properly before us.

Background. We summarize the facts found by the judge at the hearing to dismiss the complaint and vacate the preliminary injunction and lis pendens, supplemented with undisputed facts from the record. O'Neil brought suit by alleging that the parties had a business agreement providing, in general, that the Gaudet defendants would acquire real properties and pay all

2

development and construction costs thereon in exchange for O'Neil paying an agreed on rate of fourteen percent interest plus two points on the monies advanced, to be paid when the properties were sold or refinanced. O'Neil would receive any additional money from the sale of the property after the loan was repaid. O'Neil further alleges that Hausler represented both parties in these transactions.

Beginning in 2019, Charlie held title to and set up trusts for three properties in Westford, Massachusetts: 46 Pleasant Street, 58 Tenney Road, and 5 Makepeace Road. O'Neil razed the existing dwelling at 46 Pleasant Street and constructed a new home into which he and his family moved. In July 2022, Charlie, as trustee of the 46 Pleasant Street Realty Trust, brought a summary process action in the Housing Court against O'Neil to evict him from 46 Pleasant Street.[5] O'Neil asserted defenses and counterclaims based on his status as a tenant. Shortly thereafter, O'Neil retained counsel and sent a letter to Hausler requesting loan "payoff" amounts and detailed accounting of the three Westford properties. Hausler, as counsel on behalf of the Gaudet defendants, denied the existence of any agreement between

_____

[5] The eviction action was stayed on July 26, 2023, pending resolution of the Superior Court matter involving the same property which is the subject of this appeal.

3

the parties, and requested that O'Neil and his counsel provide any loan documents pertaining to the properties at issue.

In October 2022, O'Neil, as the sole plaintiff, filed a verified complaint against the Gaudet defendants and Hausler, claiming that the Gaudet defendants verbally agreed to purchase 46 Pleasant Street, 58 Tenney Road, and 5 Makepeace Road, pay all affiliated development and construction costs, and take title to the properties on the condition that O'Neil pay fourteen percent interest plus two percent on the monies loaned at the time of sale or refinance. In that complaint, O'Neil did not repeat his claim made in the Housing Court that he had been in a tenant-landlord relationship with Charlie concerning the property at 46 Pleasant Street.

In late October 2022, O'Neil also filed, in the Superior Court, a motion for a temporary restraining order, or in the alternative, injunctive relief, and a motion for issuance of a memorandum of lis pendens on 46 Pleasant Street and 5 Makepeace Road. The Gaudet defendants filed an opposition to O'Neil's motion. After a two-party hearing, a Superior Court judge approved O'Neil's memorandum of lis pendens on 46 Pleasant Street and 5 Makepeace Road, and granted O'Neil's request for a preliminary injunction, which enjoined the Gaudet defendants

4

from encumbering or transferring those two properties and from evicting O'Neil from 46 Pleasant Street.[6]

On November 2, 2023, the Gaudet defendants[7] filed an omnibus motion for reconsideration regarding the issuance of a preliminary injunction and a memorandum of lis pendens. In addition, in October 2023, Hausler moved to dismiss the amended verified complaint. In response, O'Neil moved to file a second amended complaint to address factual and legal issues that Hausler raised in his motion to dismiss and to add E.P. Snyder Enterprise Inc. as a plaintiff.

These motions were consolidated for a hearing before a second Superior Court judge. On July 30, 2024, the second Superior Court judge vacated the preliminary injunction and dissolved the lis pendens. Although the judge granted O'Neil's motion to file the second amended complaint as it related to the Gaudet defendants, she denied the request to amend with respect to Hausler because she concluded that the proposed amended allegations did not plausibly suggest an entitlement to relief as related to Hausler, i.e., were futile. Accordingly, the

---

[6] The operative complaint at the time the first judge granted O'Neil's request for injunctive relief and approved the memorandum of lis pendens was O'Neil's amended verified complaint.

[7] Charlie passed away in 2023, prior to O'Neil's deposition.

5

judge allowed Hausler's motion to dismiss the plaintiffs' amended verified complaint.

Thereafter, on August 27, 2024, the plaintiffs appealed to a single justice of this court from the vacatur of the preliminary injunction, the dissolution of the lis pendens on 46 Pleasant Street and 5 Makepeace Road, the dismissal of the claims against Hausler, and the denial of O'Neil's motion to amend as to Hausler.[8]  On September 4, 2024, the single justice denied all requests after concluding that the plaintiffs "have not demonstrated a clear error of law or an abuse of discretion," and did not report the matter to a full panel of the Appeals Court.

Three weeks later, on September 25, 2024, the judge who dismissed the plaintiffs' proposed second amended verified complaint against Hausler directed the entry of a separate and final judgment, pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), only as to the claims against Hausler.  On October 15, 2024, the plaintiffs, in their second notice of appeal, attempted to appeal from the preliminary injunction and lis pendens decisions of the single justice and second Superior Court judge.  In their third notice of appeal, filed that same

---

[8] The notice of appeal dated August 27, 2024, represented the plaintiffs' first notice of appeal.

day, the plaintiffs appealed from the separate and final judgment dismissing the claims against Hausler.

Discussion. 1. <u>Preliminary injunction and lis pendens</u>. We do not reach the parties' substantive arguments concerning the judge's vacatur of the preliminary injunction and dissolution of the lis pendens, or the single justice's denial of the petition for relief from those orders. First, the plaintiffs' notice of appeal from the order of the single justice of this court was not valid, as it appears to have been filed in the Superior Court, rather than with the clerk of this court.[9] Furthermore, we conclude that the plaintiffs' appeal of these issues, as noticed in their second notice of appeal, falls outside the statutorily-set thirty-day appeal periods under G. L. c. 231, § 118, and G. L. c. 184, § 15 (d).[10] "A timely

---

[9] Although this second notice of appeal does not appear on either the Superior Court or the Appeals Court docket, the Gaudet defendants do not argue that the notice of appeal was not filed, and the notice itself suggests that it was filed in the Superior Court. We note that when a notice of appeal is mistakenly filed in an appellate court, the Massachusetts Rules of Appellate Procedure require that it be transmitted to the clerk of the lower court and deemed filed. See Mass. R. A. P. 4 (a) (1) (B), as appearing in 496 Mass. 1601 (2022). However, the rule does not specify that the same should occur when a notice of appeal is mistakenly filed in a lower court. Regardless, even if there was a valid notice of appeal from the single justice order, it was untimely.

[10] The second notice of appeal concerns the Superior Court judge's orders vacating the preliminary injunction and dissolving the lis pendens as well as the single justice's denial of the analogous appeal. The third notice of appeal

notice of appeal is a jurisdictional prerequisite to our authority to consider any matter on appeal."  DeLucia v. Kfoury, 93 Mass. App. Ct. 166, 170 (2018).  The controlling dates for this appeal are (1) July 30, 2024, the date of the Superior Court judge's order vacating the preliminary injunction and dissolving the lis pendens, and (2) September 4, 2024, the date of the single justice's order.  We note that the plaintiffs' second notice of appeal as included in the record appendix is dated October 15, 2024.  It follows that this notice of appeal was filed forty-seven days after the conclusion of the thirty-day appeal period that began after the Superior Court judge's July 30, 2024, order.  See G. L. c. 231, § 118, second par.  While the plaintiffs initially timely appealed the orders to a single justice, their decision to seek discretionary relief from a single justice did not alter the strict thirty-day appeal period under the second paragraph of § 118.  See DeLucia, 93 Mass. App. Ct. at 167-171.  "[A] party taking an appeal from the denial of a request for injunctive relief pursuant to the second paragraph also may seek temporary relief, available at the discretion of the single justice, pursuant to the first paragraph."  Ashford v. Massachusetts Bay Transp. Auth., 421 Mass. 563, 567 (1995).  Accordingly, the plaintiffs' appeal from

concerns only the separate and final judgment dismissing all claims against Hausler.

8

the judge's order on July 30, 2024, vacating the preliminary injunction and dissolving the lis pendens, was not timely filed, leaving us without jurisdiction to consider the merits of the appeal.  Nor was the plaintiffs' second notice of appeal proper with respect to the single justice order, even if it were properly filed with the clerk of this court, as it was filed eleven days past the thirty-day deadline and was otherwise not within the scope of G. L. c. 231, § 118, second par.[11]

Were we to reach the merits of the appeal, we would see no basis to find that the judge abused her discretion in concluding that the plaintiffs failed to comply with the strict requirements of the lis pendens statute, and that the preliminary injunction was no longer warranted given the plaintiffs' evolving positions, which undermined their likelihood of success on the merits, and after a balancing of the harms.

2.  Claims against Hausler.  The plaintiffs contend that the judge erred in granting Hausler's motion to dismiss the amended verified complaint, pursuant to Mass. R. Civ. P.

---

[11] That provision authorizes an appeal from a single justice decision to a panel of the Appeals Court only where the single justice has "grant[ed] a petition for relief from" certain orders relating to preliminary injunctions.  G. L. c. 231, § 118, second par.  Here, the single justice denied all relief sought by the plaintiffs.

9

12 (b) (6), 365 Mass. 754 (1974), and denying the plaintiffs' motion to file a second amended complaint.[12]  We disagree.

We review the allowance of a motion to dismiss de novo. See A.L. Prime Energy Consultant, Inc. v. Massachusetts Bay Transp. Auth., 479 Mass. 419, 424 (2018).  We take all allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor.  See Iannacchino v. Ford Motor Co., 451 Mass. 623, 625 n.7 (2008).  To survive at the motion to dismiss phase, the plaintiff's complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief, and "must be enough to raise a right to relief above the speculative level."  Id. at 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).

a.  Breach of contract and legal malpractice claims. Counts I and XI of the second amended complaint allege that the plaintiffs contracted Hausler to represent them in the acquisition of and financing for various real estate properties,

_____

[12] In granting Hausler's motion, the judge considered the claims against Hausler in O'Neil's proposed second amended complaint after noting that O'Neil moved to file the second amended complaint against Hausler in response to Hausler's motion to dismiss the amended verified complaint.  The judge then denied the motion to file the second amended complaint because the averments contained in the revised complaint did not survive Hausler's motion to dismiss; thus, allowing the motion would have been futile.  See Chang v. Winklevoss, 95 Mass. App. Ct. 202, 212 (2019) ("An amended complaint is futile if the amended claims would not survive a motion to dismiss for failure to state a claim").

10

and that Hausler committed a breach of his contract to provide legal services when he later represented the Gaudet defendants without obtaining the plaintiffs' written consent.  The judge properly dismissed the plaintiffs' breach of contract and legal malpractice claims, concluding that the complaint failed to state how Hausler's failure to obtain the plaintiffs' written consent caused harm.

To prevail on a claim for breach of contract, the plaintiff is required to demonstrate that "there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result."  Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016).

A legal malpractice claim is a hybrid cause of action, incorporating elements of both contract and tort.  See McStowe v. Bornstein, 377 Mass. 804, 807 (1979).  Regardless of whether a legal malpractice claim arises from contract or tort, the plaintiff must sufficiently plead a causal connection to the conduct and the harm alleged.  See Greenspun v. Boghossian, 95 Mass. App. Ct. 335, 339 (2019).  The violation of a disciplinary or ethical rule "is not itself an actionable breach of duty to a client."  Fishman v. Brooks, 396 Mass. 643, 649 (1986).  Further, while violation of a canon of ethics or disciplinary

11

rule intended to protect someone in the plaintiffs' position may provide some evidence of negligence, a plaintiff still must establish that the defendant's negligence caused harm.  See McCann v. Davis, Malm & D'Agostine, 423 Mass. 558, 559-560 (1996).

The plaintiffs allege that Hausler had "conflicting interests" and represented the parties "without proper disclosures, consents, and not in compliance with the Canons of Ethics and Code of Professional Responsibility Rule 1.7."  By failing to obtain written consent, the plaintiffs argue, Hausler "was not able to provide competent and diligent representation."  Yet, nowhere do the plaintiffs plausibly state how Hausler's alleged breach or legal malpractice caused plaintiffs any harm, only that "the Plaintiffs have suffered damages and are continuing to suffer damages."  Such conclusory claims are insufficient to survive a motion to dismiss.  "[W]e look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief."  Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011).  Accordingly, these claims were properly dismissed.

b.  Breach of covenant of good faith and fair dealing claim.  Count II of the second amended complaint alleges that Hausler breached the covenant of good faith and fair dealing in "failing to provide competent and diligent legal representation

12

that represented the Plaintiffs' best interest."  "The covenant of good faith and fair dealing is implied in every contract . . ." (citation omitted).  Weiler v. PortfolioScope, Inc., 469 Mass. 75, 82 (2014).  It is well settled in Massachusetts that "[t]he scope of the [implied] covenant is only as broad as the contract that governs the particular relationship" and does not "create rights and duties not otherwise provided for in the contract" (quotation and citations omitted).  Chokel v. Genzyme Corp., 449 Mass. 272, 276 (2007).  As with their breach of contract and legal malpractice claims, the plaintiffs failed to articulate any damages caused by the alleged breach of the implied covenant.  See Bulwer, 473 Mass. at 690.  Therefore, we see no error in the dismissal of this claim.

    c.  Misrepresentation/fraud claim.  "To sustain a claim of misrepresentation, a plaintiff must show a false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment."  Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77 (1991).  To sustain a fraud claim, on the other hand, a plaintiff must also establish that the defendants made a false statement of material fact with knowledge of its falsity.  See Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 471 (2009).  Here, Count IV asserts a claim against Hausler for misrepresentation/fraud, alleging that the defendants made

13

misrepresentations of material fact to the plaintiffs, including that (1) the "[Gaudet defendants] would not retain more than the agreed loan amount plus interest and points for each of the loans," and (2) "the Defendants were the owners of the properties and had the right to use and occupy the properties."

The first representation, that the Gaudet defendants would adhere to the terms of the loan agreement, "falls within the ordinary rule that false statements of opinion, of conditions to exist in the future, or of matters promissory in nature" fail to support a claim of fraud or misrepresentation. Yerid v. Mason, 341 Mass. 527, 530 (1960). See Hogan v. Riemer, 35 Mass. App. Ct. 360, 365 (1993) ("Statements of expectation . . . do not support an action for common law fraud"). As such, the statement was not one on which the plaintiffs could reasonably rely and was not actionable. Moreover, the second amended complaint does not allege that Hausler knew the Gaudet defendants would not perform their end of any agreement.

The second statement fares no better. Hausler, as counsel on behalf of the Gaudet defendants, denied the existence of an oral agreement and any rights of the plaintiffs to the properties in response to a demand letter from O'Neil's attorney, during either the pendency of a separate eviction action against O'Neil or as initial communications in this case. We agree with the judge that Hausler's statements in the letter

14

are protected by the litigation privilege.  The privilege applies to communications made preliminary to, or in the course of, judicial proceedings.  See Sriberg v. Raymond, 370 Mass. 105, 109 (1976); Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 140 (1996).  Since Hausler made the statements in his function as the Gaudet defendants' attorney in a communication preliminary to litigation, the privilege applies, and the statements cannot support the plaintiffs' misrepresentation and fraud claims against Hausler.

d.  Breach of fiduciary duty claim.  Count V alleges that Hausler committed a breach of his fiduciary duties to the plaintiffs by conspiring with the Gaudet defendants to commit a breach of the parties' agreements.  To state a claim of civil conspiracy, the plaintiff must show "an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement."  Bartle v. Berry, 80 Mass. App. Ct. 372, 383-384 (2011).  "Key to this cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan."  Kurker v. Hill, 44 Mass. App. Ct. 184, 189 (1998).  Here, the plaintiffs' conspiracy claim fails because the second amended complaint does not allege facts suggesting Hausler's knowledge of or assistance with the alleged tortious acts of the Gaudet defendants.  The second amended complaint likewise lacks

15

sufficient facts to support the plaintiffs' breach of fiduciary duty claim against Hausler.

e. Chapter 93A claim. Count XII alleges that Hausler's conduct constituted "unfair and deceptive acts or practices" under G. L. c. 93A. "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a c. 93A violation is a question of law" (citation omitted). Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008). To determine if a practice is unfair, we consider "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)" (citation omitted). PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).

Here, the judge first concluded that the Chapter 93A claim was not viable because it was derivative of the other claims. On its own, this conclusion would not be a valid reason to dismiss the Chapter 93A claim. See Slaney v. Westwood Auto, Inc., 366 Mass. 688, 693 (1975). However, the judge did not end her analysis there, pointing out that mere negligence or a breach of contract alone does not constitute a Chapter 93A

16

violation.  See Beverly v. Bass River Golf Mgt., Inc., 92 Mass. App. Ct. 595, 606 (2018) ("Appellate courts have consistently held that a mere breach of contract, without more, does not amount to a violation of G. L. c. 93A"); Squeri v. McCarrick, 32 Mass. App. Ct. 203, 207 (1992) ("A negligent act standing by itself does not give rise to a claim under c. 93A").  The judge found that the second amended complaint failed to articulate any conduct by Hausler that was immoral, unethical, or unscrupulous. We see no reason to disturb the judge's findings.  Finally, assuming for the sake of argument that Hausler did act unethically, the second amended complaint fails to allege how that unethical conduct caused the plaintiffs' harm.  See Hershenow v. Enterprise Rent-A-Car Co. of Boston, 445 Mass. 790, 798 (2006).

Conclusion.  The appeal from the Superior Court order dated July 30, 2024, vacating the preliminary injunction and dissolving the lis pendens, is dismissed.  The separate and

17

final judgment dismissing the claims against Hausler is affirmed.

So ordered.

By the Court (Sacks, Smyth & Wood, JJ.[13]),

*Paul Little*

Clerk

Entered:  March 24, 2026.

---

[13] The panelists are listed in order of seniority.